Claude R. ANSEL, Plaintiff-Appellant,

v.

Caspar WEINBERGER, Secretary of
Health, Education and Welfare,
Defendant-Appellee.

No. 75–1743.

United States Court of Appeals
Sixth Circuit.

Argued Dec. 8, 1975.

Decided Feb. 12, 1976.

Frank J. Neff, Barkan, Barkan & Neff, Columbus, Ohio, Howdyshell & Dodd, Robert J. Dodd, Jr., New Lexington, Ohio, for plaintiff-appellant.

William W. Milligan, U. S. Atty., Thomas D. Thompson, Columbus, Ohio, for defendant-appellee.

Before EDWARDS, PECK and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

This is an appeal from denial of black lung benefits to a 75-year-old ex-coal miner with a fourth-grade education who worked in underground mines from 1914 to 1959. He has not worked since the last mine where he was employed was closed in 1959.

Mr. Ansel first sought benefits under the Federal Coal Mine Health and Safety Act of 1969. His application was denied on a finding that the evidence, including chest X-ray, did not show that he had pneumoconiosis. The finding of no pneumoconiosis and the denial of benefits were affirmed on reconsideration. The Black Lung Benefits Act of 1972 was adopted by Congress as an amendment to the 1969 Act. In accordance with requirements of the 1972 amendment, Ansel's claim was reexamined and he was notified that the Social Security Administration proposed to again deny benefits. Pursuant to Ansel's request, a hearing was held before an administrative law judge.

The applicant was hospitalized in 1968 after he suffered episodes of numbness and weakness in his left arm following a fall from a barn roof. He had previously experienced periods of momentary disorientation and confusion from time to time. After tests and examination the evaluating physician, Dr. R. D. Bateman, Jr., made a final diagnosis of cerebral arteriosclerosis with chronic vascular insufficiency, emphysema, and arteriosclerotic heart disease. The diagnosis of emphysema was based on X-rays of the chest and the opinion of a consulting radiologist.

Mr. Ansel was admitted to the same hospital in 1970 "with some pain in the right anterior chest." An X-ray of his chest showed emphysema changes "but no active infiltrate." Following treatment he was discharged with a final diagnosis of acute and chronic bronchitis by Dr. Charles Donley. The X-rays made during applicant's two periods of hospitalization were later interpreted by three radiologists at the request of the Social Security Administration and were found to be negative for pneumoconiosis.

Mr. Ansel was examined in 1971 at the request of the Social Security Administration. The examining physician reported that fluoroscopy revealed "fine nodulation throughout both lung fields indicating an early stage of silicosis." Pulmonary function studies made in connection with the examination were above the "expected normal." One of the evaluating physicians noted on a pulmonary function data sheet dated June 24, 1971, "Impression: Marked obstructive lung disease. Post bronchodilator and lung volume studies would give more definitive information."

Dr. Charles E. Bope filed a report in 1972 in connection with Ansel's black lung claim in which he listed three findings pertinent to the respiratory and cardiovascular systems based on his clinical examination. These were: cerebral arteriosclerosis with chronic vascular insufficiency, emphysema, and arteriosclerotic heart disease. To the question "If the applicant has chronic respiratory or pulmonary disease, what is your medical assessment of the severity of this impairment, i. e., to what extent does it prevent him from performing coal mine work?—Explain," he answered, "Total." Dr. Bope had been Mr. Ansel's personal physician for more than five years and was seeing him on a monthly basis. A radiology consultation report, also made in 1972, listed the "impressions" of the consultant as "1. Pulmonary emphysema. 2. Arteriosclerotic cardiovascular changes." In 1973 Dr. Bope reported that applicant had been admitted to a hospital again in March 1972 for acute and chronic bronchitis and was still unable to work.

The administrative law judge who conducted the hearing after Mr. Ansel's application for benefits had been denied originally and upon reconsideration concluded that Ansel had neither simple nor complicated pneumoconiosis. He reviewed the medical evidence and the tes-

timony taken at the hearing and determined that the claimant had "marked respiratory distress during periods when his bronchitis flares up but at other times has no marked difficulty." After discussing the pulmonary function studies, the opinion continued. "In addition the claimant's primary problem would appear to be his cerebral arteriosclerosis with vascular insufficiency and his arteriosclerotic heart disease." The administrative law judge made specific findings that Ansel's respiratory and pulmonary condition would not preclude him from doing any of the work he formerly performed in coal mines and that he was not "totally disabled" within the meaning of the Act. The Secretary adopted the findings and opinion of the administrative law judge.

The claimant then filed an action in the district court seeking a review and reversal of the final administrative decision. Following briefing on cross motions for summary judgment the district court granted the motion of the Secretary and dismissed the complaint. In his opinion the District Judge reviewed the medical evidence and made the following finding:

> The evidence before the Secretary demonstrates an emphysematic condition of the lung and acute and chronic bronchitis. However, the record fails to demonstrate the existence of pneumoconiosis. Neither Dr. Bope nor Dr. Donley, plaintiff's long-time treating physicians, have stated an opinion that plaintiff is disabled as a result of pneumoconiosis. The x-rays and pulmonary function studies are negative for pneumoconiosis. Under such circumstances, the Secretary's decision that plaintiff does not suffer from pneumoconiosis is supported by substantial evidence.

In a motion for relief from judgment the plaintiff argued that both the Secretary and the district court had failed to apply the statutory presumption of 30 U.S.C. § 921(c)(4), *infra,* and that neither had ever gotten beyond the admitted fact that plaintiff was unable to demonstrate pneumoconiosis by direct evidence. The district court entered an order denying relief, stating—

> The administrative law judge found that "[a]ll of this evidence shows that claimant has neither simple nor complicated pneumoconiosis." This finding that plaintiff does not have pneumoconiosis rebuts the statutory presumption. Accordingly, the Court affirms its holding that the Secretary's decision is supported by substantial evidence.

Under Title IV of the Federal Coal Mine Health and Safety Act of 1969 (the Act), 30 U.S.C. § 801 *et seq.,* a person who has worked in underground coal mines for stated periods of time and is totally disabled because of pneumoconiosis is entitled to receive federal benefits. The statutory definition of pneumoconiosis is "a chronic dust disease of the lung arising out of employment in an underground coal mine." 30 U.S.C. § 902. The Black Lung Benefits Act of 1972 amended the 1969 Act in a number of respects without changing its basic goals. One of the purposes of the 1972 amendment was to—

> Relax the often insurmountable burden of proving eligibility by prohibiting a denial of claims based solely on a negative chest roentgenogram and by presuming that miners with 15 years experience who are disabled by a respiratory or pulmonary impairment are disabled by pneumoconiosis. Senate Report No. 92–743 (1972) 92d Cong., 2d Sess., 2 U.S.Cong. & Admin.News '72 at 2306.

This statement refers to amended 30 U.S.C. § 921(c)(4) which creates a rebuttable presumption as follows:

(c) For purposes of this section—

> (4) if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter

and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine. ·

The 1972 amendment further provided for defining "total disability" by regulation:

The term "total disability" has the meaning given it by regulations of the Secretary of Health, Education, and Welfare, except that such regulations shall provide that a miner shall be considered totally disabled when pneumoconiosis prevents him from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he previously engaged with some regularity and over a substantial period of time. Such regulations shall not provide more restrictive criteria than those applicable under section 423(d) of Title 42. 30 U.S.C. § 902(f).

In Subpart D of the regulations which were enacted to establish "the standards for determining whether a coal miner is totally disabled due to pneumoconiosis . . ." 20 C.F.R. § 410.401(a), there appears the following definition of "total disability":

(a) A miner shall be considered totally disabled due to pneumoconiosis if:

(1) His pneumoconiosis prevents him for engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time (that is, "comparable and gainful work"; see §§ 410.424–410.426); and

(2) His impairment can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 410.412(a).

Among the general definitions included in the regulations after the 1972 amendment became law was the following:

(o) "Pneumoconiosis" means: (1) A chronic dust disease of the lung arising out of employment in the Nation's coal mines, and includes coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis, or silicotuberculosis, arising out of such employment.

For purposes of this subpart, the term also includes the following conditions that may be the basis for application of the statutory presumption of disability or death due to pneumoconiosis under the circumstances prescribed in section 411(c) of the Act:

(2) Any other chronic respiratory or pulmonary impairment when the conditions are met for the application of the presumption described in § 410.414(b) or § 410.454(b), and

(3) Any respirable disease when the conditions are met for the application of the presumption described in § 410.462, 20 C.F.R. § 410.110(o).

The regulations also deal with the determination of the existence of pneumoconiosis and application of the presumption established by 30 U.S.C. § 921(c)(4), *supra,* in part, as follows:

(a) *General.* A finding of the existence of pneumoconiosis as defined in § 410.110(*o*)(1) may be made under the provisions of § 410.428 by:

(1) Chest roentgenogram (X-ray); or

(2) Biopsy; or

(3) Autopsy.

(b) *Presumption relating to respiratory or pulmonary impairment.* (1) Even though the existence of pneumoconiosis is not established as provided in paragraph (a) of this section, if other evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment (see §§ 410.412, 410.422, and 410.426), it may be presumed, in the absence of evidence to the contrary (see subparagraph (2) of this paragraph), that a miner is totally disabled due to pneumoconiosis, or that a miner was totally disabled due to pneumoconiosis at the time of his death.

(2) This presumption may be rebutted only if it is established that the miner does not, or did not, have pneumoconiosis, or that his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

(3) The provisions of this paragraph shall apply where a miner was employed for 15 or more years in one or more of the Nation's underground coal mines; in one or more of the Nation's other coal mines where the environmental conditions were substantially similar to those in an underground coal mine; or in any combination of both.

\*   \*   \*   \*   \*   \*

20 C.F.R. § 410.414.

■ It is conceded that Claude Ansel did not establish the existence of pneumoconiosis by a chest X-ray or biopsy as provided in Section 410.414(a). Ansel contends, however, that he did establish that he is totally disabled by reason of chronic respiratory or pulmonary impairment and was therefore entitled to a presumption that his disability was due to pneumoconiosis. The contrary argument of the Secretary is a two-fold one: (1) that Ansel did not demonstrate that he is totally disabled within the Act and regulations, and (2) that even if he had demonstrated the existence of a totally disabling chronic pulmonary or respiratory disease, the evidence of the Secretary rebuts the presumption that he is suffering from pneumoconiosis. At oral argument counsel for the Secretary conceded that Mr. Ansel suffers from a chronic respiratory or pulmonary impairment, but argued that the pulmonary function tests demonstrated that he was not totally disabled.

The regulations contain the following general criteria for determining total disability:

(a) A determination of total disability due to pneumoconiosis is made in accordance with this section when a miner cannot be presumed to be totally disabled due to pneumoconiosis (or to have been totally disabled due to pneumoconiosis at the time of his death), under the provisions of § 410.418. In addition, when a miner has (or had) a chronic respiratory or pulmonary impairment, a determination of whether or not such impairment is (or was) totally disabling is also made in accordance with this section for purposes of § 410.414(b).

(b) A determination of total disability may not be made for purposes of this part unless pneumoconiosis is (or is presumed to be) the impairment involved.

(c) Whether or not the pneumoconiosis in a particular case renders (or rendered) a miner totally disabled, as defined in § 410.412, is determined from all the facts of that case. Primary consideration is given to the medical severity of the individual's pneumoconiosis (see § 410.424). Con-

sideration is also given to such other factors as the individual's age, education, and work experience (see § 410.-426).

20 C.F.R. § 410.422.

A careful search of the record has failed to disclose a substantial basis for the conclusion of the administrative law judge that it would "appear" that Ansel's primary problems were cerebral arteriosclerosis and arteriosclerotic heart disease. These conditions undoubtedly were present, but no medical evidence pointed to them as the primary health problem of the applicant. On the other hand, while noting the existence of these conditions, Dr. Bope ascribed total inability to perform coal mine work to chronic respiratory or pulmonary disease. On the black lung medical report he listed arteriosclerosis and heart disease with emphysema as findings pertinent to the respiratory system and cardiovascular system.

The court further concludes that there is no substantial basis for the finding that Claude Ansel did not establish that he was totally disabled within the definition of the Black Lung Act. His treating physician stated unequivocally that Ansel was totally disabled for work in a coal mine. No other medical witness contradicted this statement, and the lay testimony supported Dr. Bope's opinion. The witness Otto White testified that he began working in the mines with Claude Ansel in 1933 and that Ansel was one of the best workers. Mr. White had continued to see Ansel "a couple of times a month" after they left the mine. He testified that even while walking downhill it was necessary for Mr. Ansel to stop and rest after 50 feet or so, and that his condition had gotten "a lot worse" in the last five years. The administrative law judge received this testimony as competent "other evidence" and considered it along with the medical evidence and the testimony of Mr. and Mrs. Ansel. He did not construe amended 30 U.S.C. § 923(b) as permitting lay testimony of persons other than the miner's wife only in cases where the miner is deceased. This is a reasonable construction. Since disability of a living miner may not be established by the wife's testimony alone under Section 921(c)(4), other lay evidence must have been contemplated.

There is no evidence in the record from which it could be concluded that at the time of his hearing Claude Ansel could engage " . . . in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he previously engaged with some regularity and over a substantial period of time." 30 U.S.C. § 902(f). Though fluoroscopy disclosed an early stage of silicosis, a condition included within the definition of pneumoconiosis in 20 C.F.R. § 410.110(o), the applicant's chest X-rays were interpreted as negative with respect to the requirements of 30 U.S.C. § 921(c)(3) for an irrebuttable presumption of pneumoconiosis. Thus he relied on the rebuttable presumption of Section 921(c)(4). Giving primary consideration to the medical evidence and considering the lay testimony concerning the limitations on Mr. Ansel's physical activities, all in light of Ansel's age, education and work experience, we hold that this record "demonstrates the existence of a totally disabling respiratory or pulmonary impairment. . . ." Section 921(c)(4). Since the Act provides that when these conditions are met "there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis . . ." *Id.,* the contrary finding of the administrative law judge affirmed by the district court was clearly erroneous unless the Secretary may be held to have rebutted the presumption.

The Secretary contends that the presumption was rebutted by evidence which established that Claude Ansel did not have pneumoconiosis. He relies on the negative findings of three radiologists who examined X-rays and the pulmonary studies. It is obvious that the negative X-rays may not be relied upon to rebut the presumption of Section

**310**

921(c)(4). If he had been able to produce a positive X-ray, there would have been no need to invoke the presumption. The very existence of a negative X-ray is a prerequisite to reliance upon the presumption of pneumoconiosis as established by other evidence. Furthermore, under the 1972 amendment, negative X-ray evidence may not be the sole basis for a denial of benefits. 30 U.S.C. § 923(b). Nor do we believe the presumption of Section 921(c)(4) can be rebutted by showing that pneumoconiosis was not established by pulmonary function studies. The regulation which establishes the levels required for a finding of disabling pneumoconiosis on the basis of a ventilatory study does not purport to provide proof of the nonexistence of pneumoconiosis. Once Claude Ansel produced evidence which entitled him to the presumption of Section 921(c)(4), that presumption could be rebutted only by establishing that he did not have pneumoconiosis, there being no contention that his impairment did not arise out of employment in the mines. In view of the unequivocal testimony of Dr. Bope, it appears that the Secretary would have been required at least to produce a medical opinion that Mr. Ansel did not have pneumoconiosis in order to rebut the presumption. No such testimony appears in this record. *See Whitson v. Finch,* 437 F.2d 728, 732 (6th Cir. 1971).

Equally unavailing is the argument that the administrative law judge's finding of no total disability rebuts the presumption. Once it has been established that an applicant is entitled to the presumption of Section 921(c)(4), that determination includes a finding of total disability, and arguments that the applicant was not totally disabled may not be the basis of rebutting the presumption.

We believe that the district court failed to distinguish between "true" statutory pneumoconiosis, which can be directly proven by X-ray and biopsy, and "presumed" pneumoconiosis which exists when an eligible applicant is totally disabled because of pulmonary or respiratory impairment but cannot prove "true" pneumoconiosis.[1] To hold that presumed pneumoconiosis is rebutted by evidence which merely precluded a finding of true pneumoconiosis would render the presumption of Section 921(c)(4) a nullity.

The judgment of the district court is vacated and the case is remanded for entry of an award of disability benefits.

---

1. Quotation marks are used because the Act awards benefits on the basis of legal, not technical medical definitions of pneumoconiosis.