**Carl M. HILL**

v.

**Caspar W. WEINBERGER, Secretary of Health, Education and Welfare.**

Civ. No. 3-74-326.

United States District Court, E. D. Tennessee, N. D.

Oct. 29, 1976.

Jerry P. Black, Ronald W. Belfon, Legal Aid Clinic, University of Tennessee, Knoxville, Tenn., for plaintiff.

John L. Bowers, Jr., U. S. Atty., Charles N. Stedman, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action for review of the final decision of the Secretary of Health, Education and Welfare pursuant to the Federal Coal Mine Health & Safety Act, 30 U.S.C. §§ 801, 901 *et seq.* Both the plaintiff and Secretary have moved for summary judgment and have filed briefs in support thereof.

Plaintiff is a sixty-seven-year-old ex-coal miner who worked in the mining industry for 11½ years, ending in 1970, as a weigher, tipple operator, payroll clerk and supply man. His application for benefits was denied initially and upon reconsideration by the Bureau of Disability Insurance. A Hearing Examiner considered the claim *de novo* and denied benefits. The Appeals Council affirmed the Hearing Examiner's decision. A complaint was filed in this Court, and the case was remanded to the Appeals Council with instructions. The Appeals Council entered a decision which again denied benefits, and plaintiff brought the present action.

Plaintiff contends that the Secretary erroneously failed to afford him the benefit of the interim presumption of total disability due to pneumoconiosis under 20 C.F.R. § 410.490. That section provides, in pertinent part, that a miner will be presumed to be totally disabled due to pneumoconiosis if one of the following requirements is met:

"(i) A chest roentgenogram (x-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428); or

"(ii) In the case of a miner employed for at least 15 years in underground or comparable coal mine employment, ventilatory studies establish the presence of a chronic respiratory or pulmonary disease . . . as demonstrated by values which are equal to or less than the values specified in the following table. . ."

Plaintiff's theory is that he was entitled to the presumption because certain chest X-rays were interpreted as positive by his personal physician, Dr. R. A. Obenour. The same X-rays were reinterpreted as negative by several doctors who apparently are under contract as film readers for the Social Security Administration. Plaintiff contends that Dr. Obenour's interpretations are credible, and thus were sufficient, in and of themselves, to invoke the interim presumption.

This contention was made by plaintiff over a year ago when this case was before the Court for review. At that time, the Court was of the opinion that Section 410.490 was subject to several interpretations, one of which was that the interim presumption is invoked once a miner presents credible medical evidence of pneumoconiosis, regardless of contrary medical evidence. Because it was not clear from the Secretary's decision how he interpreted Section 410.490, the Court remanded this case to the Appeals Council with the following instructions:

"1) What were the reasons for rejecting the diagnosis of simple pneumoconiosis by Dr. Obenour (claimant's treating physician) in favor of other conflicting medical evidence?

"2) Does the miner have the burden of proving that he has simple pneumoconiosis by a preponderance of the evidence in order to be entitled to the presumption of 20 C.F.R. 410.-490(b)(1)(i) or is the treating physician's diagnosis of simple pneumoconiosis alone sufficient to invoke the presumption?"

The Court had expected to receive a prompt response from the Secretary. When it became obvious that this would not occur, the Court held in *Harness v. Weinberger*, 401 F.Supp. 9 (E.D.Tenn.1975), that whether an X-ray demonstrates or fails to demonstrate the existence of pneumoconiosis is a question of fact for the Secretary to resolve by considering the interpretative opinions of all physicians who have examined it. Under *Harness*, the existence of a positive X-ray interpretation is not sufficient to invoke the interim presumption when the Secretary considers all the interpretations of that X-ray, and, relying upon substantial evidence, finds the X-ray to be negative for pneumoconiosis.

The Secretary's position appears to be consistent with *Harness*. In response to the questions posed by the Court in the remand order, the Appeals Council stated, in substance, that it considers the interpretative opinions of all film readers, and bases its judgment with respect to a particular X-ray upon the credibility of the film readers, which includes, among other things, their qualifications as film readers.[1]

Plaintiff has advanced two contentions in support of his theory that Section 410.490 should be construed to mean that the submission of some credible X-ray evidence, i. e., a positive interpretation by a qualified film reader or treating physician,

1. The National Institute of Occupational Safety and Health, Public Health Service, certifies readers of coal miners' chest X-rays. In theory, a "B reader" is more qualified than an "A reader." Dr. Obenour is an "A" reader and the Secretary rejected his interpretations in favor of interpretations made by several "B" readers. (See Tr. 167).

invokes the interim presumption, irrespective of the existence of negative interpretations of the same X-rays by other qualified film readers. First, he contends that any other construction of Section 410.490 would render the interim presumption meaningless. It is his position that when the *weight* of a miner's X-ray evidence demonstrates the existence of pneumoconiosis, the miner has no need for the interim presumption. Thus, according to plaintiff, the presumption was intended to assist only those miners who are able to produce some credible X-ray evidence of pneumoconiosis.

This contention is based upon the erroneous premise that the existence of pneumoconiosis is the only element that a miner must prove to qualify for benefits. Contrary to plaintiff's argument, the interim presumption is extremely important to a miner whose X-rays clearly demonstrate the existence of pneumoconiosis. Without the presumption, it would be incumbent upon him to prove, in addition to the fact that he has pneumoconiosis, that he is totally disabled, and that his total disability is due to pneumoconiosis. When the presumption is invoked, however, the latter elements are presumed to have been established, and the burden shifts to the Secretary to prove that the miner is not totally disabled.

■ Secondly, the plaintiff contends that a literal reading of Section 410.490 only requires that a miner produce a credible positive X-ray interpretation to invoke the presumption. That section of the regulations provides, in pertinent part, that a miner is entitled to the presumption when:
"A chest roentgenogram (X-ray) . . . establishes the existence of pneumoconiosis. . . ."

Thus, the regulations refer to *a chest X-ray* rather than the *interpretation* of a chest X-ray by a single film reader.

Whether a chest X-ray demonstrates the existence of pneumoconiosis is a question of fact. If some film readers interpret an X-ray as positive, and others interpret it as negative, it is the Secretary's prerogative, and not the Court's, to weigh the evidence and make a finding whether the X-ray in question is positive or negative.

It has been the Court's experience in reviewing black lung cases that there is considerable room for disagreement in interpreting chest X-rays. Rarely does a case come before the Court in which there are not conflicting interpretations of a single X-ray.[2] It is the Secretary's prerogative, as the trier of fact, to weigh the X-ray interpretations, and to determine which are credible. We are bound to accept his findings in this regard so long as they are supported by substantial evidence.

■ Plaintiff underwent ventilatory function studies on two occasions. Dr. Obenour conducted a study on June 23, 1971, that yielded an MVV value of 44 L./min. and an $FEV_1$ value of 3.79 L. He stated that the low MVV value was disproportionate to the other values, which suggested a nonpulmonary factor, and that the other values were within normal limits. (Tr.100). Dr. Thomas Sullivan conducted a second study on February 5, 1974, that yielded an MVV value of 103 L./min. and an $FEV_1$ value of 2.48.

For a person of plaintiff's height, 70 inches, the interim table provides that MVV must be less than 100 L./min. *and* $FEV_1$ must be less than 2.5 L. before a chronic lung impairment will be presumed to be totally disabling pneumoconiosis. 20 C.F.R. § 410.490. Neither study performed on plaintiff yielded MVV and $FEV_1$ values which, when read together, satisfied the interim criteria.

2. A good example of this is found in an argument made to the Appeals Council in a recent case:
"We've had four physicians to read [a particular X-ray] and they've all said different things. One said there were enough opacities to find pneumoconiosis; another said there were opacities but not enough to find pneumoconiosis; a third said there were no opacities at all; and a fourth said that the X-ray was not even of sufficient quality to read." *McKamey v. Secretary*, Civ. No. 3–76–153 (E.D.Tenn.1976), Tr. at 82.

Plaintiff nevertheless contends in his brief that the ventilatory study data were sufficient to raise the interim presumption. Several reasons are urged in support of this conclusion. First, he seems to suggest that the interim presumption is raised when a claimant's $FEV_1$ value satisfies the interim values. (Plaintiff's Brief at 7). The regulations clearly provide that both MVV and $FEV_1$ must be equal to or less than the interim values before the presumption becomes operative. 20 C.F.R. § 410.490.

Second, he relies on the statements of two physicians, Dr. Obenour and Dr. White, that plaintiff has a respiratory impairment. This evidence, of course, is relevant to the ultimate question of whether plaintiff has totally disabling pneumoconiosis. It has no relevance, however, to the question of whether the proof was sufficient to raise the interim presumption.

There are only four ways to raise the interim presumption: an X-ray, autopsy or biopsy that demonstrates the existence of pneumoconiosis or a pulmonary function study that demonstrates the existence of a chronic respiratory or pulmonary impairment. None of these requirements has been satisfied in the present case. Therefore, if plaintiff is to qualify for benefits, he must do so under the permanent rather than the interim adjudicatory rules.

Plaintiff further contends that the Secretary erroneously relied on negative X-rays and pulmonary function studies to rebut the interim presumption. This contention is without merit because, as previously stated, the interim presumption was never raised in this case. Negative X-rays or negative pulmonary function studies play no role in rebutting the interim presumption, but rather, they serve to prevent its operation.

Plaintiff next contends that, on the basis of *Ansel v. Weinberger*, 529 F.2d 304 (6th Cir. 1976), the Secretary erred by rejecting the diagnosis of plaintiff's treating physician, Dr. Obenour, that plaintiff was totally disabled due to pneumoconiosis. *Ansel* dealt with the rebuttable presumption of 30 U.S.C. § 921(c)(4), a presumption separate and distinct from the interim presumption of 20 C.F.R. § 410.490. Unlike the interim presumption, the presumption of § 921(c)(4) is raised when a miner whose X-rays and pulmonary function studies are negative proves the following elements:

(1) fifteen or more years of coal mining employment,

(2) a total disability,

(3) a chronic respiratory or pulmonary impairment, and

(4) a sufficient causal relation between the chronic lung impairment and the total disability.

In short, § 921(c)(4) operates to create a presumption that a chronic lung impairment which causes total disability in an eligible miner is pneumoconiosis.

■ Not only is there a difference in the evidence necessary to raise the interim presumption and the rebuttable presumption of § 921(c)(4), but there is also a difference in the evidence necessary to a rebuttal of each. The interim presumption is rebutted by substantial evidence that the plaintiff is not totally disabled. The § 921(c)(4) presumption, on the other hand, is rebutted by substantial evidence that the lung impairment from which plaintiff suffers, in fact, is not pneumoconiosis.[3] Both presumptions, however, can be rebutted by a showing that plaintiff's pneumoconiosis did not arise out of coal mine employment.[4]

■ In the present case, plaintiff is not eligible for the rebuttable presumption of § 921(c)(4) because the Appeals Council found that he worked in the underground mines for only 11½ years. Plaintiff himself alleged only 11 years of such employment. (Tr.57). Fifteen or more years of coal mining employment is an element essential to eligibility for this presumption.

---

3. Judge Lively indicated in *Ansel* that the Secretary cannot rely on negative X-rays or pulmonary function studies to prove the absence of pneumoconiosis.

4. There is a presumption that a lung impairment existing in a person who worked in the mines for ten or more years arose out of that employment. 20 C.F.R. § 410.416.

Claimants who fail to qualify for benefits under the interim presumption or the presumption of 30 U.S.C. § 921(c)(4) nevertheless may qualify for benefits under 20 C.F.R. § 410.414(b)(3). That section provides:

"However, where the evidence shows a work history reflecting many years of such coal mine employment (although less than 15), as well as a severe lung impairment, such evidence may be considered, in the exercise of sound judgment, to establish entitlement in such case, provided that a mere showing of a respiratory or pulmonary impairment shall not be sufficient to establish such entitlement."

The Secretary acknowledged that the plaintiff has a breathing impairment (Tr. 11, 170), but apparently concluded that it was neither severe enough to be totally disabling nor the primary reason for plaintiff's inability to engage in comparable and gainful work. (Tr.11).

Doctor Obenour reported that plaintiff suffers from chronic bronchitis. Dr. White concluded that plaintiff has a mild respiratory impairment, but that an asthmatic bronchitis condition prevents plaintiff from engaging in mine work. (Tr.116).[5] Presumably, Dr. White made this diagnosis on the ground that even a person with a mild respiratory impairment should not be exposed to coal dust. Neither Dr. Obenour nor Dr. White stated whether plaintiff was capable of engaging in comparable and gainful work as defined in 20 C.F.R. § 410.426.

The record further shows that plaintiff was declared to be totally disabled by Dr. Thomas Bowman in September of 1970 because of rather severe osteoarthritis and bilateral inguinal hernia. (Tr. 95; *see also* Tr. 57). Under the regulations a minor is totally disabled by pneumoconiosis only if it is the primary reason for his inability to work, and medical impairments other than pneumoconiosis may not be considered. 20 C.F.R. § 410.426.

In view of all the evidence of record, it was reasonable for the Secretary to conclude, in his discretion, that plaintiff failed to satisfy his burden of establishing entitlement to benefits under 20 C.F.R. § 410.-414(b)(3).

For the foregoing reasons, it is ORDERED that plaintiff's motion for summary judgment be, and the same hereby is, denied. It is further ORDERED that the Secretary's motion for summary judgment be, and the same hereby is, sustained.

Order Accordingly.

---

5. Dr. White also concluded that plaintiff has class O pneumoconiosis, which is not sufficient to establish entitlement to benefits. 20 C.F.R. § 410.428.