Charles F. JEFFRIES

v.

David MATHEWS, Secretary of Health, Education and Welfare.

Civ. No. 3-76-268.

United States District Court, E. D. Tennessee, N. D.

Feb. 4, 1977.

John Philip Williams, LaFollette, Tenn., for plaintiff.

John L. Bowers, Jr., U.S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action for review of the final decision of the Secretary of Health, Education and Welfare denying plaintiff's claim for black lung benefits pursuant to the Federal Coal Mine Health & Safety Act, 30 U.S.C. § 901 *et seq.* Plaintiff has moved for summary judgment on the ground that the Secretary's decision is not supported by substantial evidence and is contrary to law.

Plaintiff filed an application for black lung benefits on May 26, 1972. (Tr. 98–101). His claim was denied initially and on reconsideration by the Bureau of Disability Insurance. Plaintiff and his attorney then appeared before a Hearing Examiner who found that plaintiff was entitled to benefits. The Appeals Council notified plaintiff that it had decided to review the Hearing Examiner's decision on its own motion, and plaintiff's attorney appeared before the Ap-

peals Council in Arlington, Virginia, to present oral argument. (Tr. 73–97). By written decision dated July 23, 1976, the Appeals Council reversed the favorable decision of the Hearing Examiner and found that plaintiff is not entitled to black lung benefits. (Tr. 5–13). The Appeals Council's decision thus became the final decision of the Secretary.

Plaintiff stated in his application for benefits that he was born on January 13, 1921, that he completed the eighth grade, that he was employed for 15 years in the coal mines, and that his disability was shortness of breath. (Tr. 98).

Plaintiff testified at the administrative hearing that during his years in the mines, he loaded coal with a shovel and was a brakeman. (Tr. 43–44). In his written work history, he also mentioned his work as trackman, machine operator, motorman, and other general mining jobs. (Tr. 154–155). He testified at the hearing that the coal dust in the mines where he worked was so thick that a person could see "not over five feet." (Tr. 59–60). He terminated his mining employment in 1953, and from 1955 to 1957 he worked as a partner in a mining business. (Tr. 155). He testified that he left the mines forever in 1957 or 1959

"because the breathing capacity would not let me stay in, because if we worked—we had to shoot down coal, we was using either black powder or dynamite. I couldn't enter it or go back in for the period of say two hours, well, I couldn't expect those men to do my work for me, and so I just had to go back and quit." (Tr. 52).

When asked if he could perform coal mine work today, he replied: "No, sir, I can't." (Tr. 57).

Plaintiff testified that he has difficulty sleeping at night and that "there's periods of time that you wake up coughing so extremely hard that you can't sleep." (Tr. 57–58). He testified that he smothers when "the atmosphere is extremely heavy" (Tr. 58), and that he always sleeps with the window open "regardless of the weather," so he can get air. (Tr. 62). His regular physician, Dr. R. C. Pryse, prescribed medication to relieve his breathing difficulties. (Tr. 58–59).

Since leaving the mines, plaintiff has performed a number of jobs, including work as a construction laborer, tire-recapper, service station attendant, truck driver, and sewing machine operator. (Tr. 63–64). He is currently employed as the overhaul mechanic for the Furtex Division of United Merchants and Manufacturers, Inc., in Jacksboro, Tennessee. His immediate supervisor, Charles M. Green, stated that plaintiff's present job could be performed by a twelve-year-old boy, and "is nothing like anything in the coal mines." (Tr. 153). Plaintiff testified that his work involves repairing the company's knitting machines when they break down, and that the working atmosphere in the plant is clear. (Tr. 54–56, 65–67). When asked to compare his present work with coal mine work, he testified: "Well, it wouldn't even compare with anything like that." (Tr. 55).

There are numerous medical reports in the record. Plaintiff was examined by Dr. William K. Swann on December 5, 1972. In the medical history he took from plaintiff, Dr. Swann noted shortness of breath, a cough productive of bloody sputum on numerous occasions, and recent treatment for bronchitis. (Tr. 128). Dr. Swann's chest X-ray disclosed small rounded opacities, category P–1/0, in the two uppermost lung zones. Dr. Swann's X-ray of December 5, 1972 was reread as negative for pneumoconiosis by Dr. Maria A. Strong, a Cincinnati radiologist, certified as a "B" reader (Tr. 130), and on October 12, 1975 by Dr. Harold Spitz, another Cincinnati radiologist certified as a "B" reader. (Tr. 184).

Plaintiff was examined by Dr. Roscoe C. Pryse, a LaFollette, Tennessee, general practitioner (Tr. 144), on February 26, 1973. Dr. Pryse was Mr. Jeffries' regular physician. (Tr. 132). In the medical history he took from plaintiff, Dr. Pryse noted a significant cough which persists throughout the day and is often productive of sputum, frequent shortness of breath, the need to be propped up in bed at night, dyspnea, wheez-

ing, and bronchial rales. Dr. Pryse diagnosed plaintiff's condition as chronic bronchitis. (Tr. 142–143).

Plaintiff was examined on August 29, 1974, by Dr. Robert P. Ball. A chest X-ray revealed small rounded opacities, category 1/0, in one lung zone, and small irregular opacities, category 1/1, in two lung zones. (Tr. 163). A pulmonary function study showed an $FEV_1$ of 2.16 and an MVV of 74, which satisfy the interim standards of 2.3 for $FEV_1$ and 92 for MVV for a man of plaintiff's height (65 to 66 inches). The Appeals Council held that these results failed to invoke the interim presumption because the study was performed some fourteen months after the June 30, 1973 cut-off date and conflicted with the other pulmonary function studies of record. (Tr. 11).

Plaintiff was examined by Dr. Sheldon E. Domm, a Knoxville thoracic surgeon certified as an "A" reader (Tr. 172), on May 7, 1974. In the medical history he took from plaintiff, Dr. Domm noted the same symptoms that Dr. Pryse did, diagnosing plaintiff's condition as coal workers' pneumoconiosis. (Tr. 158–159). His chest X-ray revealed small rounded opacities, category Q–2/1, in all six lung zones, and small irregular opacities, category T–1/2, in two lung zones. (Tr. 160). His pulmonary function study showed an $FEV_1$ of 2.2, which satisfies the interim standard, and an MVV of 98, which does not. (Tr. 157). Dr. Domm stated that plaintiff's lung impairment was minimal and did not "per se" preclude coal mining or comparable work. (Tr. 159).

Doctor Ball's X-ray of August 29, 1974 was subsequently reread as positive for pneumoconiosis by Dr. Mordecai Halpern, a Los Angeles radiologist certified as a "B" reader (Tr. 189), on May 1, 1975. This rereading revealed small rounded opacities, category P–1/1, in two lung zones. (Tr. 188). Dr. Domm's X-ray of May 7, 1974 and Dr. Ball's X-ray of August 29, 1974 were subsequently reread in series as negative

for pneumoconiosis on October 12, 1975, by Dr. Harold Spitz. (Tr. 18, 182).

Plaintiff was X-rayed at the LaFollette Hospital on February 16, 1973. This X-ray was interpreted as negative for pneumoconiosis (Tr. 138) by Dr. James B. Dukes, a Knoxville radiologist certified as an "A" reader (Tr. 139), and reread as negative for pneumoconiosis on April 24, 1973 (Tr. 140) by Dr. Paul S. Wheeler, a Baltimore radiologist certified as a "B" reader (Tr. 141), and on October 12, 1975 (Tr. 183) by Dr. Harold Spitz.

On January 26, 1973, a pulmonary function study was performed on plaintiff by technicians employed by Cardio-Pulmonary Diagnostics, Inc. The tracings were interpreted by Dr. Jorge Castillo as showing an $FEV_1$ of 3.14 and an MVV of 136 (Tr. 133), both of which exceed the interim standards. Dr. Castillo said the study reveals "a mild obstructive ventilatory defect." (Tr. 133).

A blood gas study performed by Dr. Thomas Sullivan at the East Tennessee Baptist Hospital on November 5, 1973 revealed a $p^{co}_2$ of 32.5 and a $p^o_2$ of 81.1, which exceeds the standards set out in the regulations. (Tr. 145). Dr. Sullivan observed that plaintiff suffers from "mild hypocapnia." * (Tr. 145).

The Hearing Examiner concluded on the basis of the medical evidence of record that plaintiff "is totally disabled due to pneumoconiosis, which arose out of his employment in the Nation's coal mines." (Tr. 21). The Appeals Council reversed and found, after reciting all the medical evidence of record, that the "credible evidence including X-ray interpretations, pulmonary function study results, and other relevant evidence of record, does not demonstrate that the claimant was 'totally disabled,' as a result of a chronic respiratory or pulmonary impairment on or before June 30, 1973." (Tr. 13).

Plaintiff conceded at oral argument on his motion that, under the case law, he was

---

* Hypocapnia is a deficiency of carbon dioxide in the blood. *Dorland's Medical Dictionary.* Plaintiff's deficiency is not severe enough to be totally disabling. *See* 20 C.F.R. § 410.424 & Appendix to Subpart D.

not entitled to the interim presumption of 20 C.F.R. § 410.490. He contends, however, that the Secretary erred by denying him the rebuttable presumption of 30 U.S.C. § 921(c)(4). Under this section, a miner suffering from a lung impairment is presumed to be suffering from pneumoconiosis when the following elements are established: (1) 15 or more years of coal mining employment, (2) a chronic respiratory or pulmonary impairment, (3) total disability and (4) a sufficient nexus between the lung impairment and total disability. *See Ansel v. Weinberger,* 529 F.2d 304 (6th Cir. 1976); *Cope v. Mathews,* 415 F.Supp. 467 (E.D. Tenn.1976). The burden is upon plaintiff to prove each of these elements.

Plaintiff has satisfied the first two elements. Both the Appeals Council and the Hearing Examiner found that he worked in the mines in excess of fifteen years. As to the second element, plaintiff's personal physician concluded that he suffers from chronic bronchitis, and this conclusion does not appear to have been contradicted. In regard to the final two elements, total disability and a causal relationship between total disability and the chronic respiratory or pulmonary impairment, the Appeals Council found:

> "The record does not contain any other medical evidence showing a pulmonary impairment which meets or equals the severity of an impairment in the Listing to the Appendix to Subpart D of section 410.424 of the Regulations, nor does he meet the continuing criteria for establishing inability to engage in gainful work on the basis of the more stringent requirements set forth in section 410.426 of the Regulations." [1]

This finding was based on "the interpretations of the X-rays of record, the results of pulmonary function studies, blood gas studies, the reports of treating physicians, testimony at the hearing, and the attorney's oral argument before the Appeals Council." (Tr. 11). The Appeals Council concluded that plaintiff was not entitled to the presumption because the proof failed to establish that he was totally disabled by a chronic respiratory or pulmonary impairment before July 1, 1973. (Tr. 12).[2]

■ Having examined the record, the Court is of the opinion that it was reasonable for the Appeals Council to conclude that plaintiff did not meet his burden of proving that he is totally disabled due to a chronic respiratory or pulmonary impairment. Plaintiff contends that he has met his burden because:

> "The uncontradicted testimony of plaintiff and a statement by his present supervisor demonstrate that plaintiff is presently unable to perform coal mine work or comparable work as a result of his chronic respiratory or pulmonary impairment and that his present job is much less strenuous than his prior coal mine work." Plaintiff's brief at 13.

■ It is not axiomatic that a claimant is totally disabled within the meaning of the Act simply because the work in which he is engaged is not comparable to coal mine work. The test is whether a claimant's lung impairment is the primary reason for his total disability or is severe enough, in and of itself, to bring about total disability. The burden of making such a showing is on plaintiff, and proof that a claimant is not performing coal mine work or comparable work is not alone sufficient to demonstrate that he is incapable of doing such work primarily because of a lung impairment.

Plaintiff relies on *Ansel v. Weinberger, supra, Cope v. Mathews,* 415 F.Supp. 467 (E.D.Tenn.1972), *Pike v. Mathews, supra* and *Marlow v. Mathews,* 412 F.Supp. 925

---

1. Tr. 11. 20 C.F.R. § 410.426 provides in part that pneumoconiosis which is not medically equivalent to an impairment listed in the Appendix to Subpart D will be considered totally disabling only if it is the primary reason for the claimant's inability to engage in comparable and gainful work. Impairments other than pneumoconiosis may not be considered.

2. Although the Appeals Council did not refer specifically to 30 U.S.C. § 921(c)(4), its ruling contains a number of references to "actual or presumed" pneumoconiosis and the "rebuttable presumption." This indicates that the Appeals Council assessed plaintiff's claim in light of § 921(c)(4).

(E.D.Tenn.1976), in support of his position. The record in each of these cases contained well-supported and uncontradicted medical opinions of examining physicians stating unequivocally that the claimants were totally disabled by a lung condition.

No such opinion can be found in the present record. Two physicians were requested to respond to the following question set forth in a social security disability evaluation form:

"If the applicant has chronic respiratory or pulmonary disease, what is your medical assessment of the severity of this impairment, i. e. to what extent does it prevent him from performing coal mine work?—EXPLAIN." Question No. 6, Form TI # 21.

Dr. Roscoe Pryse, plaintiff's treating physician, made a diagnosis of chronic bronchitis and possible pneumoconiosis, but he did not comment on the severity of the condition by answering the above question. (Tr. 143). Dr. Sheldon Domm examined plaintiff on May 7, 1974, and responded to the above question as follows: "Minimal—Does not prevent per se." (Tr. 159).

Doctor H. David Kerr examined the results of certain chest X-rays, pulmonary function studies and an arterial blood gas study. He concluded:

"It can be concluded that this claimant does not have a significant impairment of ventilatory function. There is no impairment of gas exchange; the hypocarpia observed is usually the result of excessive alveolar ventilation associated with apprehension about arterial puncture and is of no consequence." (Tr. 147).

■ In summary, the record lacks sufficient medical evidence that plaintiff's lung impairment is totally disabling. Having failed to prove this element, plaintiff failed to invoke the presumption of § 921(c)(4). It is true, as plaintiff contends, that there is lay testimony that he is totally disabled by a lung impairment. We are of the opinion, however, that lay testimony is insufficient to establish the medical severity of a lung impairment in cases involving living miners when it is contrary to the medical evidence of record. It would be a rare case that did not contain some lay testimony that the claimant was totally disabled.

■ Plaintiff's final contention is that the Secretary disregarded *Ansel* by relying on negative X-rays and pulmonary function studies to rebut the presumption of § 921(c)(4). This contention must fail in light of our holding that the presumption was never invoked.

The Secretary did rely, in part, on negative pulmonary function studies to support his finding that plaintiff was not totally disabled.[3] *Ansel* appears to have qualified the evidentiary value of negative pulmonary function studies in at least two respects: (1) they may not be relied upon to prove that a lung impairment *is not pneumoconiosis*, and (2) they *alone* will not support a finding that a claimant is not *totally disabled* by a lung impairment when there is significant medical evidence to the contrary. We do not read *Ansel* as holding that negative pulmonary function studies are irrelevant to the question of *total disability*. The Court is of the opinion that negative pulmonary function studies may be considered together with "other relevant evidence" as defined in 20 C.F.R. § 410.-414(c) in assessing the *severity* of the lung impairment. Negative pulmonary function

---

**3.** The Appeals Council relied in part on Social Security Ruling 73–37, which provides in pertinent part:

"Where X-ray or ventilatory function test results submitted by a claimant for black lung benefits fail to establish total disability under interim regulatory criteria in Regulations No. 10, section 410.490ff., *held*, there is an inference that the miner is not totally disabled. Further held, where other relevant evidence is submitted, total disability may be determined to exist only when the evidence in file establishes the level of severity contemplated in section 410.426.

\* \* \* \* \* \*

". . . where the values in the interim table in section 410.490(b)(ii) are exceeded, only in an unusual case will such individual be totally disabled due to a lung impairment. A finding of disability becomes less likely as the ventilatory study values increase further above this table." (Tr. 11).

studies, of course, are not conclusive on the question of total disability, but they are relevant to that question.

In the present case, the Secretary weighed the negative pulmonary function studies together with the other relevant evidence of record, including the results of an arterial blood gas study and the reports of examining physicians, and concluded that plaintiff had failed to prove that he was totally disabled by his lung condition. This finding is supported by substantial evidence and, therefore, must be affirmed.

Order Accordingly.