Ershel COLLINS

v.

David MATHEWS, Secretary of Health, Education and Welfare.

Civ. No. 3–76–330.

United States District Court, E. D. Tennessee, N. D.

March 31, 1977.

---

Jerry P. Black, Jr., U. T. Legal Clinic, Knoxville, Tenn., for plaintiff.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action for review of the final decision of the Secretary of Health, Education and Welfare denying plaintiff's claim for black lung benefits pursuant to the Federal Coal Mine Health and Safety Act, 30 U.S.C. § 901 *et seq.* Plaintiff contends that the Secretary erred by denying him the benefit of the presumption of 30 U.S.C. § 921(c)(4).

The rebuttable presumption created by Section 921(c)(4) provides that, when certain conditions are met, a miner who is suffering from a totally disabling lung condition which does not show up on X-rays as pneumoconiosis will be presumed to be suffering from pneumoconiosis. Its primary function is to shift the burden of proof to the Secretary; when the presumption is invoked, the Secretary must come forward with evidence demonstrating that the totally disabling lung condition is not pneumoconiosis or did not arise out of coal mine employment. The operation of the rebuttable presumption was discussed by Judge Lively in *Ansel v. Weinberger,* 529 F.2d 304 (6th Cir. 1976).

▪ Only those miners who establish the following elements are entitled to the presumption: (1) Fifteen or more years' employment in the underground mines, (2) a total disability, (3) a chronic respiratory or pulmonary impairment, and (4) a causal relation between the total disability and the chronic respiratory or pulmonary impair-

ment, which in most cases means that the lung impairment is the primary reason for the total disability. If the Secretary finds that any of these elements have not been established, and such finding is supported by substantial evidence, then a claimant would not be entitled to the presumption.

The Appeals Council found that plaintiff worked in the mines for at least fifteen years. This finding satisfied the first element of the presumption of Section 921(c)(4). A serious question exists whether this finding is supported by substantial evidence. Plaintiff alleged in his application for benefits that he worked in the mines for twelve to fourteen years. Noting this allegation, the Hearing Examiner limited his finding to a mining career of "more than ten years." Several medical histories in the record contain statements made by plaintiff to his physicians that he worked in the mines for a period of less than fifteen years.

The Appeals Council based its finding on plaintiff's earnings record. We have examined this record and are far from convinced that it demonstrates a career in the mines of at least fifteen years' duration. The record indicates that plaintiff worked in the mines at various times between 1937 and 1952. It further indicates, however, that he engaged in non-mining employment in 1944, 1945, part of 1943 and part of 1946. Although plaintiff's absence from the mines during those years is admitted in the testimony he gave before the Hearing Examiner, the Appeals Council made no mention of it.

If plaintiff did not work in the mines for at least fifteen years, he would not be eligible, as a matter of right, for the Section 921(c)(4) presumption. Since neither party has addressed this important question, the Court is hesitant to premise the decision in this case with respect to Section 921(c)(4) on plaintiff's employment history alone. Accordingly, we will assume, *arguendo,* that plaintiff worked in the mines for at least fifteen years, although we express serious doubts as to the validity of this assumption.

The second element of the Section 921(c)(4) presumption, the existence of a chronic respiratory or pulmonary impairment, appears to have been established by plaintiff. Three doctors examined him, and each concluded that he suffered from pneumoconiosis or chronic obstructive lung disease. There are no opinions to the contrary by doctors who personally examined plaintiff.

As to the third element of Section 921(c)(4) presumption, the existence of a causal relation between the chronic respiratory or pulmonary impairment, the Appeals Council found:

"The Appeals Council has given careful consideration to all relevant evidence of record including the claimant's testimony, reports of examinations, opinions of physicians, and results of blood gas studies. While it is noted that the claimant may have some symptoms of a respiratory impairment such as shortness of breath, a productive cough, occasional wheezing, and chest discomfort, physical examinations performed on January 5, 1971, August 13, 1973, December 12, 1974 and March 8, 1976, noted no significant abnormalities concerning the lungs. Blood gas studies performed on August 13, 1973, were also interpreted as normal (Exhibit 27). Although one of the claimant's physicians, Dr. John Burrell, has stated that he considers the claimant to be totally disabled (Exhibit 31), the Appeals Council notes that the objective evidence of record does not establish that the claimant has a significant pulmonary impairment nor that he was totally disabled because of a respiratory impairment on or before June 30, 1973. Further, the chest X-rays and the spirometric studies of record constitute probative and credible evidence of record regarding respiratory function and must be given significant weight in evaluating the claimant's residual function capacity." (Tr. 11).

█ Plaintiff contends that this finding contravenes the holding in *Ansel* because the Secretary impermissibly relied on negative X-ray interpretations and pulmonary

functions to prevent the presumption from being invoked. The Secretary concedes that the Appeals Counsel erroneously relied on negative X-ray interpretations in finding that plaintiff was not totally disabled by his lung condition. But it is contended by the Secretary that, apart from the X-ray reports, "other relevant evidence" exists which supports that finding.

█ Specifically, the Secretary contends that *Ansel* does not preclude negative pulmonary function studies from being used to assess the severity of a lung impairment. Accordingly, it is the Secretary's position that the "other relevant evidence" of record, which includes a negative arterial blood gas study and negative pulmonary function studies, supports the Appeals Council's finding that plaintiff's lung impairment is not severe enough to be totally disabling.[1]

The extent to which *Ansel* limits the use of negative pulmonary function studies to prevent the operation of or rebut the Section 921(c)(4) presumption was recently considered by this Court in *Jeffries v. Mathews,* 431 F.Supp. 1030 (E.D.Tenn.1977):

"The Secretary did rely, in part, on negative pulmonary function studies to support his finding that plaintiff was not totally disabled. *Ansel* appears to have qualified the evidentiary value of negative pulmonary function studies in at least two respects: (1) they may not be relied upon to prove that a lung impairment *is not pneumoconiosis,* and (2) they *alone* will not support a finding that a claimant is not *totally disabled* by a lung impairment when there is significant medical evidence to the contrary. We do not read *Ansel* as holding that negative pulmonary function studies are irrelevant to the question of *total disability.* The Court is of the opinion that negative pulmonary function studies may be considered together with 'other relevant evidence' as defined in 20 C.F.R. § 410.414(c) in assessing the *severity* of the lung impairment. Negative pulmonary function studies, of course, are not conclusive on the question of total disability, but they are relevant to that question." (footnote omitted). Id., at 1034–1035.

Plaintiff contends that the reports of three physicians demonstrate that his lung condition is totally disabling. The Secretary, on the other hand, contends that the "other relevant evidence," which consists primarily of a negative arterial blood gas study and negative pulmonary function studies, represents substantial evidence in support of the finding that plaintiff's lung condition is not totally disabling.

Doctor Leon Bogartz examined plaintiff in August of 1973. He concluded that plaintiff suffered from a "significant" respiratory impairment, but did not state whether or not such condition was so severe as to be totally disabling. An arterial blood gas study was performed, and it yielded normal results. No clubbing or edema was noted, and plaintiff's AP diameter was listed as normal. The X-ray relied on by Dr. Bogartz as demonstrating pneumoconiosis was later interpreted by two physicians as negative, and the pulmonary function study relied on by him was later found to be unacceptable because it was not supported by spirometric tracings.

Doctor William Swann examined plaintiff in December of 1974, some eighteen months after the June 30, 1973 cut-off date. *See Ingram v. Califano,* 547 F.2d 904 (5th Cir. 1977); *Begley v. Mathews,* 544 F.2d 1345 (6th Cir. 1976). He did not state whether he considered plaintiff's lung condition to be totally disabling. He based his diagnosis of pneumoconiosis, in part, on an X-ray that was subsequently reinterpreted as negative, and a pulmonary function study that was later determined to be invalid because of an

---

1. The Secretary suggests in his brief that pulmonary function studies alone are sufficient to support a finding that a lung condition is not totally disabling, and are thereby sufficient to defeat the Section 921(c)(4) presumption. A reading of *Ansel* refutes this proposition. The pulmonary function studies performed on the plaintiff in *Ansel* did not satisfy the interim criteria. The Court of Appeals found that the negative pulmonary function studies, standing alone, were insufficient to overcome a well documented and uncontradicted statement by plaintiff's treating physician of many years that plaintiff's lung condition was totally disabling.

excessive variation between the $FEV_1$ curves and an insufficient number of MVV determinations. He concluded that there was no evidence of cyanosis, clubbing or edema, that breath sounds were equal, that there were no rales or wheezes, and that no nodes or masses were palpable in the neck.

The most favorable evidence to plaintiff consists of a statement made by Dr. John Burrell. Dr. Burrell reported on October 11, 1974 that plaintiff had been treated by the Lake City Medical Group, of which Dr. Burrell is a member, since 1964, and diagnosed plaintiff as having chronic obstructive pulmonary disease and hypertension. Dr. Burrell stated:

"It is my professional opinion that Mr. Collins is totally and permanently disabled from maintaining gainful employment in the coal mining industry or related industry with exposure to chronic dust, fumes, etc. (Enclosed are reports from Dr. Bogartz and Dr. Swann)." (Tr. 124).

A report by a claimant's treating physician of many years stating that the claimant is totally disabled by a lung condition normally is afforded significant weight when the only contradictory evidence consists of negative pulmonary function studies. *See, e. g., Ansel v. Weinberger, supra; Cope v. Mathews,* 415 F.Supp. 467 (E.D. Tenn.1976); *Pike v. Mathews,* 414 F.Supp. 848 (E.D.Tenn.1976); *Marlow v. Mathews,* 412 F.Supp. 925 (E.D.Tenn.1976). In each of these cases, however, the reports of the treating physicians were well supported by medical findings, and they stated unequivocally that the claimant was totally disabled by a lung condition.

Doctor Burrell's report is not supported by any medical findings. He merely referred to the reports of Dr. Bogartz and Dr. Swann, which have been discussed above. Moreover, his statement that plaintiff was totally disabled by a lung condition was not unequivocal. Any person with a lung condition, whether or not it is totally disabling, should avoid exposure to coal dust and fumes. Thus, a statement that a person should avoid exposure to coal dust or fumes does not necessarily mean that the person's lung condition prevents him from performing work that is comparable to coal mining but does not involve exposure to dust or fumes.

We conclude that it was reasonable for the Secretary to find on the basis of the "other relevant evidence" of record that plaintiff failed to demonstrate that his lung condition was severe enough to be totally disabling. Having failed to prove this element, plaintiff failed to invoke the presumption of Section 921(c)(4).

We note parenthetically that a serious question exists whether plaintiff would have been entitled to benefits even if he had invoked the Section 921(c)(4) presumption. The presumption is rebutted by a showing that the totally disabling lung condition did not arise out of coal mine employment. Of course, there is a rebuttable presumption that any lung impairment of a person who worked in the mines for ten or more years arose out of mining employment, and it must be presumed that plaintiff's lung condition stemmed from his work in the mines. *See* 20 C.F.R. § 410.416. The record in this case indicates, however, that plaintiff's lung condition may have been caused by heavy cigarette smoking and exposure to sand and dust during his post-1952 employment in the construction industry. In particular, Dr. Bogartz stated:

"Mr. Collins is a gentlemen who has been a heavy smoker and has worked for approximately 12 years in underground coal mining. It should be noted that he also worked with concrete and sand and this may contribute to his respiratory difficulties at the present time. . . ." (Tr. 118).

In addition to the above statement, we note that plaintiff last worked in the mines almost twenty-five years ago, and that he performed heavy construction labor for seventeen years after leaving the mines. This strongly suggests that his exposure to coal dust in the mines did not render him totally disabled.

For the foregoing reasons, it is OR-DERED that plaintiff's motion for summary judgment be, and the same hereby is, denied, and that the Secretary's motion for summary judgment be, and the same hereby is, sustained.

Order Accordingly.