John A. PICHON, Plaintiff,

v.

F. Daniel MATHEWS, Secretary of
Health, Education and Welfare,
Defendant.

No. 75 C 43.

United States District Court,
N. D. Illinois, E. D.

Feb. 5, 1976.

Lindholm & Williamson, Peoria, Ill.,
for plaintiff.

Samuel K. Skinner, U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM DECISION

MARSHALL, District Judge.

This is an action to review a final decision of the Secretary of the Department of Health, Education and Welfare (Secretary) that the plaintiff, John A. Pichon, is not entitled to benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, *as amended,* Black Lung Benefits Act of 1972, 30 U.S.C. § 901 *et seq.* (Supp.1974). The Secretary has answered the complaint and filed a certified copy of the administrative record. The parties have filed cross-motions for summary judgment based on the administrative record.

The sole issue in the case is whether the Secretary's decision denying benefits under the Act is based on substantial evidence. 30 U.S.C. § 923(b) (Supp.1974), *incorporating by reference* 42 U.S.C. § 405(g), (h) (1970). Resolution of this issue requires a thorough review of the administrative record and the applicable statutes and regulations.

The plaintiff was born on April 20, 1904, and has a seventh grade education. Virtually all his adult life was spent working in the coal industry, first as a rock crusher and later as a blacksmith at a strip mining operation. He retired in 1970 due to illness. The administrative law judge (ALJ) found that the plaintiff had been employed as a coal miner for at least 10 years.

After his retirement in 1970, he applied for and received unemployment compensation for approximately 40 weeks. During this time he stated that he was available for work if it was close to his home and would not require much physical exertion.

The plaintiff's current monthly income is $421.30, which is based on monthly social security retirement benefits of $271.30 and a union pension of $150. He is not receiving and has not applied for workmen's compensation benefits for pneumoconiosis.

The medical evidence in the record consists of the plaintiff's testimony concerning his medical complaints, roentgenographic reports, ventilatory function study reports, hospital records, and statements from various physicians who have treated the plaintiff in the past.

At the administrative hearing, the plaintiff testified that he is hard of hearing, he has a frequent cough that produces phlegm, a susceptibility to colds and respiratory infections, and has difficulty breathing. He currently takes a variety of medication.

He spends his days around the house, reading the newspaper and occasionally mowing the lawn. He takes walks now and then for exercise, but he is unable to do the work he used to do because of his ill health.

The roentgenographic reports were negative for pneumoconiosis. A chest X-ray taken during a hospitalization in October, 1972, was normal. Similarly, a February, 1973, chest X-ray, which was interpreted by Dr. William De Hollander, who is certified by the National Institute of Occupational Safety and Health, Public Health Service, as a reader of coal miners', chest X-rays, showed "no profusion of small opacities . . . [or] areas of massive pulmonary fibrosis," or abnormalities in the diaphragm. The film was classified as o/o for pneumoconiosis, which indicates clear lungs. See 20 C.F.R. § 410.428 (1975). The doctor noted what might be an arteriosclerotic disease in the aorta.

The plaintiff had pulmonary function studies performed on January 12 and 29, 1973. In the first test he had a one second forced expiratory volume ($FEV_1$) of 0.97 liters and a maximum voluntary ventilation (MVV) of 40.5 liters/minute. The examining doctor's report stated that plaintiff was hard of hearing, had

difficulty following directions, and cooperated poorly. The results of the second test were dramatically different; the plaintiff's $FEV_1$ was 3.14 liters, while the MVV was 94 liters/minutes. Moreover, his cooperation was described as good.

Saint Joseph's Hospital in Joliet, Illinois furnished a report stating that the plaintiff was admitted on October 28, 1972, complaining of chest pain radiating down both arms. He was discharged on November 6, 1972, with a final diagnosis of arteriosclerotic heart disease, coronary insufficiency, angina pectoris, and hiatus hernia.

A May, 1973, Administrative Black Lung Report by Dr. James J. Nordland states that the plaintiff complained of a chronic cough of six years duration, which was accompanied by phlegm, and of shortness of breath. An examination revealed clear lungs. The final diagnosis was arteriosclerotic heart disease and a spastic bowel syndrome. In a subsequent letter, discussing the 1972 hospitalization, Dr. Nordland stated, after noting that the plaintiff's lungs were clear, that the chest pain might have resulted from the hiatal hernia.

Dr. John H. Houseworth stated in a letter dated June 13, 1974, that the plaintiff had had a cancerous left vocal cord removed at Carl Clinic in Urbana, Illinois, by a Dr. Walker in 1970, and that he also underwent radiation therapy for the same problem. He further stated the plaintiff's lungs were clear to auscultation and percussion, and that the poor results of the first pulmonary function study were probably due to an acute respiratory infection. Because the second study produced normal results, he could not affirm that the plaintiff had a significant pulmonary impairment.

Dr. Walker sent a letter dated June 7, 1974, wherein he stated that his examinations of the plaintiff had been limited to the voice box, which was normal.

To be entitled to benefits under the Act for black lung disease the plaintiff must establish that he was a coal miner, that he is totally disabled due to pneumoconiosis, and that the pneumoconiosis arose out of employment in the nation's coal mines. 30 U.S.C. §§ 902(b), (d), (f), 921(a); 20 C.F.R. § 410.410(b) (1975).[1]

While there is no question that the plaintiff was a coal miner (30 U.S.C. § 902(d) (Supp.1974)) there is a serious question of whether he is suffering from pneumoconiosis. The Secretary concluded that he was not, and that decision must be affirmed if supported by substantial evidence.

The statutes and regulations governing pneumoconiosis determinations are almost unfathomable. In simplified form, the plaintiff, by virtue of the Black Lung Benefits Act of 1972, can establish his entitlement to benefits by satisfying the interim criteria contained in 20 C.F.R. § 410.490 (1975) or the permanent criteria contained in 20 C.F.R. §§ 410.412–.462 (1975).

The interim criteria provide, in substance, that a miner is entitled to a rebuttable presumption of total disability if his claim is filed before July 1, 1973, and a chest X-ray or biopsy establishes pneumoconiosis, or ventilatory studies establish the existence of a chronic respiratory or pulmonary disease. 20 C.F.R. § 410.490 (1975).[2]

The Secretary's conclusion that the plaintiff was not entitled to this presumption is supported by substantial evidence. The chest X-rays were all negative. Similarly, the ventilatory studies were within permissible limits. The minimum $FEV_1$ and MVV values for a man of the plaintiff's height are 2.6 liters and 104 liters/minute respectively. On his first test the plaintiff was well below these values, but his cooperation was poor, and Dr. Houseworth suggested

---

1. Pneumoconiosis is defined as a chronic dust disease of the lung arising out of employment in a coal mine. 30 U.S.C. § 902(b) (Supp. 1974).

2. The regulations establish minimum ventilatory values. If a claimant exceeds the minimum value for his height he is not entitled to the rebuttable presumption.

that he was probably suffering from an acute respiratory infection. The second test, however, yielded results of 3.14 liters ($FEV_1$) and 94 liters/minute (MVV), which were described by Dr. Houseworth as normal. Based on this evidence, the Secretary concluded that the plaintiff did not qualify for rebuttable presumption and that conclusion is supported by substantial evidence.

Although the plaintiff did not establish his eligibility for benefits under the interim rule, the permanent adjudicatory rules provide an alternative basis for establishing eligibility. Section 411(c)(3) of the Act, 30 U.S.C. § 921(c) (Supp. 1974), provides for an irrebuttable presumption of disability if complicated pneumoconiosis is established by chest X-rays. Since all the plaintiff's X-rays are negative, he is not eligible for benefits under this section.

If a miner cannot establish eligibility under Section 411(c)(3) because of negative X-rays, he may still be entitled to a rebuttable presumption of total disablement due to pneumoconiosis under Section 411(c)(4), 30 U.S.C. § 921(c)(4) (Supp.1974), if he can demonstrate by other evidence that he is suffering from a totally disabling chronic respiratory or pulmonary impairment. This presumption is provided for in 20 C.F.R. § 410.-414(b), which in turn incorporates Sections 410.412, 410.422, and 410.426. Simply stated, the regulations require the claimant to establish that his impairment is caused by pneumoconiosis and it is totally disabling, considering his age, education, and work experience. See 20 C.F.R. § 410.424 (1975). The existence of pneumoconiosis can be established by ventilatory studies, 20 C.F.R. § 410.-426(b), physical performance tests, 20 C.F.R. § 410.426(c), or by other relevant evidence, 20 C.F.R. § 410.426(d).

The plaintiff's respiratory values were greater than those provided on the regulations and no performance tests were taken. Therefore, the only remaining manner in which the plaintiff could establish eligibility was through other evidence. The court has considered all the testimony offered at the hearing and the various medical reports submitted as evidence. The conclusion reached is that the Secretary's finding that the plaintiff's medical problems are not the result of a lung disease or impairment is supported by substantial evidence.

Since the plaintiff was unable to avail himself of any of the statutory presumptions previously discussed, he had the burden of establishing that he was totally disabled due to pneumoconiosis. Based on negative X-rays, the positive ventilatory studies, and absence of any medical testimony indicating pneumoconiosis, the Secretary's findings must be affirmed. Moreover, to the extent that the record would support a finding that the plaintiff was totally disabled, the cause is not pneumoconiosis. All the evidence indicates that he suffers from several heart related maladies, including arteriosclerotic heart disease and coronary insufficiency.

Therefore, the finding of the Secretary that the plaintiff, John A. Pichon, is not entitled to benefits under the Act is supported by substantial evidence. The defendant's motion for summary judgment is granted, and the plaintiff's cross-motion for summary judgment is denied. An order will enter dismissing the action.