**Emal MULLINS**

v.

**David MATHEWS, Secretary of Health, Education and Welfare.**

Civ. A. No. 75–0602–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

April 19, 1976.

W. H. Robinson, Abingdon, Va., for plaintiff.

E. Montgomery Tucker, Asst. U. S. Atty., Roanoke, Va., for defendant.

### MEMORANDUM OPINION AND ORDER

TURK, Chief Judge.

Plaintiff brought this action seeking review of a final decision by the Secretary of Health, Education and Welfare denying his claim for benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901 *et seq.* (herein-

after the "Act"). Jurisdiction is pursuant to § 413(b) of the Act, 30 U.S.C. § 923(b), which incorporates 42 U.S.C. § 405(g). The issues to be decided by this court are whether the Secretary's decision is supported by substantial evidence, in which case it must be affirmed, or whether there is good cause for remanding the case to the Secretary for further consideration.

Mr. Mullins was born October 19, 1920 and has a seventh-grade education. He was married in 1947. Mr. Mullins alleges twenty years of coal mining experience, with his last mining employment having ended in 1962. Since then he has worked as a machine operator in a napkin factory, as a riveter and fork lift operator for a boat manufacturer, and, most recently, as a substitute night watchman on a part-time basis. He also testified that he had some experience as a prison guard prior to 1962. Mr. Mullins is currently receiving both Veterans Administration and Social Security disability benefits.

At his administrative hearing, Mr. Mullins testified that he suffers from dizzy spells, nervousness, loss of memory, weakness, and pains in his head, neck, shoulders, back, chest, and stomach. He stated that his back and legs hurt when he walks and that he is unable to engage in any significant type of activity. While he does some work in his garden, he spends a lot of time during the day sleeping and watching television. When asked about his breathing difficulties, Mr. Mullins indicated that he is short-winded and coughs a lot. He conceded, however, that one doctor had advised him that his shortness of breath was due to "nerves." Mr. Mullins' wife also appeared at his hearing and generally corroborated his testimony concerning his complaints.

The earliest medical evidence is a report of a hospitalization from July 27 to August 4, 1970. Mr. Mullins was admitted complaining of abdominal pain. All findings were negative. He was subsequently discharged with a tentative diagnosis of gastritis and neurogenic spastic colitis. Mr. Mullins' chest was found to be clear to auscultation and no cough was noted by Dr. W. H. Zimmerman, the attending physician.

In a letter dated March 15, 1971, Dr. Zimmerman stated that he first saw Mr. Mullins on April 4, 1969 at which time Mr. Mullins was complaining of stomach and shoulder pain. Dr. Zimmerman felt the pain pattern was that of neuritis and prescribed a nerve medication. Mr. Mullins was next seen by Dr. Zimmerman at the time of Mr. Mullins' hospitalization in July of 1970. Following his discharge, Mr. Mullins again visited Dr. Zimmerman on December 5, 1970. At that time, Mr. Mullins stated that he probably had cancer, and asked Dr. Zimmerman to order that he change jobs for his health's sake.

In an x-ray report dated April 7, 1971, Dr. J. S. Billingsley reported that Mr. Mullins' lung fields were clear and that his mediastinal structures were normal.

Mr. Mullins was hospitalized again from June 20 to July 5, 1972 at a Veterans Administration hospital in Fort Wayne, Indiana. His chief complaints involved pain in his neck, back, shoulders and stomach. The attending physician diagnosed degenerative arthritis but felt that some of Mr. Mullins' problems were psychosomatic. He indicated that Mr. Mullins could resume his pre-hospital activities after discharge.

In another letter dated July 24, 1972, Dr. Zimmerman again reported on his treatment of Mr. Mullins. There was again no mention of any type of respiratory complaint. Dr. Zimmerman stated that he had concluded Mr. Mullins could return to his work following an examination on July 17, 1972.

On July 9, 1973, Mr. Mullins was given a pulmonary function test by Dr. W. H. Atwood. The test revealed an MVV of 82 and an $FEV_1$ of 2.75. Mr. Mullins' height was set at 65 inches. His cooperation was described as fair on maximal voluntary ventilation and good on the forced vital capacity.

Mr. Mullins was examined by Dr. D. L. Mainter on July 25, 1973. Dr. Minter's findings were rather limited, but he diagnosed pulmonary emphysema, osteoarthri-

tis, and anxiety syndrome. An attached x-ray report by Dr. S. D. Gunderson indicated that Mr. Mullins' lung fields were clear.

Dr. Zimmerman conducted another examination of plaintiff on September 19, 1973. Dr. Zimmerman diagnosed degenerative osteoarthritis and chronic anxiety, but again found no respiratory impairment. He concluded that Mr. Mullins' arthritis precluded him from doing heavy or strenuous work. He also stated, however, that Mr. Mullins had been trying for three years "to find some excuse to get off work permanently."

Dr. C. P. Duren, an internist, examined Mr. Mullins on March 15, 1974. His report contained no findings with respect to a respiratory condition, and Dr. Duren concluded that Mr. Mullins' problems were idiopathic myalgia and arthralgia, intermittent hypertension, and moderate obesity. He imposed no restrictions.

On November 12, 1974, Mr. Mullins was given a pulmonary function study and an arterial blood gas test. The pulmonary study revealed an MVV of 103 and an $FEV_1$ of 3.11. Dr. Duren concluded that the results ruled out any significant restrictive or obstructive pulmonary disease, and indicated that pulmonary fibrosis, emphysema, and bronchitis were unlikely. He stated that the somewhat reduced MVV was probably the result of poor effort. The blood gas test produced a $PCO_2$ reading of 32 and a $PO_2$ of 68. The remaining medical evidence of record is unrelated to any respiratory or pulmonary impairment.

■ In reviewing decision of the Secretary under 42 U.S.C. § 405(g), the district court is bound by those factual findings of the Secretary which are based on substantial evidence. It is not the function of the court to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence. *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir. 1966).

The Act provides that the Secretary shall pay benefits to any miner who is totally disabled due to pneumoconiosis. 30 U.S.C. § 921(a). Pursuant to § 411(b) of the Act,

30 U.S.C. § 921(b), the Secretary has promulgated regulations prescribing the standards for determining whether a claimant has established his entitlement to benefits. These regulations provide for several means of proving pneumoconiosis and of establishing total disability therefrom. They include several presumptions to aid a miner in proving his claim. See 20 C.F.R. §§ 410.-401–410.490. Under any of the relevant provisions, however, Mr. Mullins has failed to meet his burden of proof.

■ He does not qualify under the more liberal, interim regulations adopted by the Secretary in 1972 since none of the x-ray evidence indicates pneumoconiosis, 20 C.F.R. § 410.490(b)(1)(i), and the two pulmonary studies considered by the administrative law judge do not meet the criteria of § (b)(1)(ii) of those regulations, 20 C.F.R. § 410.490(b)(1)(ii). Although this failure would not necessarily preclude him from qualifying under the permanent criteria of §§ 410.412 to 410.462, he has similarly failed to satisfy the pertinent provisions of those regulations. There is no evidence of "complicated pneumoconiosis," 20 C.F.R. § 410.-418, and his pulmonary studies do not meet the standards of § 410.426(b). The results of his arterial blood gas study also do not satisfy § (1) of the appendix to Subpart D of the regulations. While his number of years in the mines might qualify Mr. Mullins to consideration under § 410.414(b), he has failed to establish the existence of a totally disabling chronic respiratory or pulmonary impairment as required by that section. In conclusion, the court is constrained to conclude that there is little evidence to indicate that Mr. Mullins is totally disabled as the result of pneumoconiosis or any other respiratory or pulmonary impairment which might be presumed to be pneumoconiosis.

■ Following the April 1975 decision of the Administrative Law Judge in his case, Mr. Mullins had another pulmonary function study conducted on June 30, 1975. The results met the criteria of § 410.-490(b)(1)(ii) of the Secretary's regulations and were consequently submitted by Mr. Mullins. Although a medical examination

is conducted after the cutoff date of HEW's jurisdiction, June 30, 1973, it still may be relevant to the essential issue of whether a claimant was totally disabled due to pneumoconiosis prior to that date. *See Collins v. Weinberger,* 401 F.Supp. 377 (W.D.Va. 1975). In the present situation, however, the submitted pulmonary study was conducted two years after the jurisdictional cutoff. When this is considered in light of the progressive nature of pneumoconiosis, the court must conclude that this study cannot be considered to constitute "good cause" for remanding the case to the Secretary. Mr. Mullins is reminded, however, that he may refile his claim with the Secretary of Labor, to whom jurisdiction has passed, and submit this study as well as any other evidence to establish his qualification subsequent to June 30, 1973.

Since the court has concluded that the Secretary's decision in this case is supported by substantial evidence and that good cause for remanding the case does not exist, the decision must be, and hereby is, affirmed.