Adolph E. PROKES, Plaintiff-Appellee,

v.

Forrest David MATHEWS, Secretary, Health, Education and Welfare, Defendant-Appellant.

No. 76–1283.

United States Court of Appeals, Sixth Circuit.

Argued April 12, 1977.

Decided July 27, 1977.

William W. Milligan, U. S. Atty., Thomas Thompson, Columbus, Ohio, Robert E. Kopp, Mark H. Gallant, Appellate Sect., Civil Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Steven E. Cichon, St. Clairsville, Ohio, for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and ED-WARDS and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

This case arises under the Black Lung Benefits Act of 1972[1] which amended the Coal Mine Health and Safety Act of 1969. Two issues are presented: (1) the extent to which the Social Security Administration is obligated to make certain that all relevant evidence is considered in deciding black lung claims, and (2) the related issue of the validity of Social Security Ruling 73–37. The Secretary appeals from a judgment of the district court granting the plaintiff's motion for summary judgment and remanding to the Secretary for further proceedings. We affirm.

At the time of the hearing in 1974 the claimant Prokes was 78 years old and had not worked in the mines since 1958, though he had worked in and around the mines for more than 15 years prior to 1958. The only

1. 30 U.S.C. § 901 et seq (Supp. V, 1975).

witnesses before the administrative law judge were the claimant and his son, a mining engineer who attempted to assist his father in presenting his case. The claimant testified that he had great difficulty in breathing, that he had trouble sleeping, requiring two pillows doubled up, and that he could barely climb the steps to attend the hearing. Three of the exhibits which were introduced were reports by specialists who interpreted a chest X-ray of the claimant. One interpreted the X-ray as disclosing simple pneumoconiosis while the other two interpreted it as negative for pneumoconiosis. Another exhibit was a ventilatory function study report which showed values that did not meet or equal the severity required by applicable regulations to entitle Prokes to a presumption of total disability based upon a pulmonary impairment. 20 CFR § 410.-490(b)(1)(ii). The administrative record also contained a note from the claimant's personal physician, Dr. Ortiz, certifying that he had been treating Prokes off and on since May 1965 for various conditions including chronic bronchitis with pulmonary emphysema.

The administrative law judge advised the claimant and his son that the problem with Dr. Ortiz's report was that "[c]hronic bronchitis and pulmonary emphysema are not pneumoconiosis." A more complete report was then secured from Dr. Ortiz by the administrative law judge and copies were sent to the claimant with the advice that he could object to admission of the report. The claimant's son relayed his father's concern that the report apparently again referred to bronchitis, and objected to its admission since the administrative law judge had told them at the hearing that "bronchitis did not come under the Black Lung qualification." The administrative law judge sustained the objection to the later report of Dr. Ortiz and did not consider it.

The district court correctly held that it was error to exclude from consideration a report of the long-time treating physician of a claimant which indicated the existence of bronchitis and pulmonary em-physema. The claimant did not have an attorney at the hearing and apparently had a misconception concerning the relevance of the existence of bronchitis and pulmonary emphysema to his black lung claim. The administrative law judge should have fully developed this "other evidence" rather than relying on the claimant's uncounseled and uninformed objections for excluding the report of Dr. Ortiz and not obtaining further information as to the severity of these conditions. If Dr. Ortiz should report that the claimant was totally disabled (within the definition contained in the Act) by reason of chronic bronchitis and pulmonary emphysema this would be significant evidence to be considered in determining whether he was entitled to the presumption that his disability resulted from pneumoconiosis, 30 U.S.C. § 921(c)(4) (Supp. V, 1975).

The second issue on appeal concerns application by the administrative law judge, and the Secretary, of Social Security Ruling 73–37. This ruling consists of a headnote, or syllabus, followed by an example and discussions. The headnote is as follows:

Where X-ray or ventilatory function test results submitted by a claimant for black lung benefits fail to establish total disability under interim regulatory criteria in Regulations No. 10, sections 410.490 ff., held, there is an inference that the miner is not totally disabled. Further held, where other relevant evidence is submitted, total disability may be determined to exist only when the evidence in file establishes the level of severity contemplated in § 410.426.

In the decision of the administrative law judge the medical evidence was examined and it was concluded that the claimant was "not entitled to a presumption of total disability based upon the interim criteria." The administrative law judge then considered the "continuing criteria" (20 CFR § 410.412–410.462), noting that they are more stringent than the interim criteria, and concluded that the evidence did not establish total disability due to pneumoconiosis under these standards. These considerations led to the conclusion that—

Where X-ray and ventilatory test findings do not demonstrate the presence of pneumoconiosis or a chronic respiratory or pulmonary impairment, respectively, in accordance with the interim criteria, there is an inference that Applicant is not totally disabled due to such a cause. (See Social Security Ruling 73–37.) While ventilatory studies demonstrate the ability of the Applicant to move air in and out of his lungs, such studies do not necessarily describe the ability of Applicant's lungs to transfer oxygen to his bloodstream. Nevertheless, where the values of the interim table of the regulations (20 CFR 410.490(b)(ii)) are exceeded, only in an unusual case will such an individual be totally disabled due to a lung impairment. A finding of disability becomes less likely as the ventilatory study values increase further above this table.

This language is copied verbatim from the discussion portion of Ruling 73–37. The finding of the administrative law judge, adopted by the Secretary as his final decision was:

The preponderance of the medical and other evidence does not demonstrate the presence of a totally disabling pneumoconiosis or a totally disabling chronic respiratory or pulmonary disease presumed to be pneumoconiosis.

The district court held that the Secretary's decision insofar as it was based upon the inference referred to in Ruling 73–37, was contrary to the Act and erroneous as a matter of law. On appeal the Secretary argues that Ruling 73–37 is valid and that the administrative law judge applied it properly. The plaintiff contends that reliance on Ruling 73–37 was error since it purports to rebut the presumption created in 30 U.S.C. § 921(c)(4) by means of an inference which is based in part at least on the same negative medical evidence which permitted resort to the presumption in the first place. The plaintiff relies on our opinion in *Ansel v. Weinberger*, 529 F.2d 304 (6th Cir. 1976). In *Ansel*, the court found that the claimant had established that he was totally disabled within the meaning of the Act; in fact, that there was no substan-

tial evidence to the contrary. *Id.* at 309. Since his disability arose from a chronic respiratory or pulmonary impairment, Ansel was entitled to a presumption under Section 921(c)(4) that he was disabled due to pneumoconiosis. The court held that this presumption could not be rebutted by evidence consisting only of negative X-rays and pulmonary function studies.

■ The purpose in creating the rebuttable presumption of § 921(c)(4) was to provide an alternative to X-rays as a means of establishing entitlement to black lung benefits. Congress concluded that many claims were being denied on the basis of negative X-rays where other evidence indicated the existence of coal miner's pneumoconiosis. S.Rep.No.92–743, 92d Cong., 2d Sess., 2 U.S. Code Cong. & Admin.News (1972) at 2306. Thus Section 921(c)(4) provides that a person with 15 years exposure who cannot produce an X-ray which meets the standards of 30 U.S.C. § 921(c)(3) (Supp. V, 1975) for the establishment of pneumoconiosis may nevertheless be entitled to benefits if he establishes total disability arising from a pulmonary or respiratory impairment. The claimant has the burden of proving his entitlement to benefits, and the effect of the presumption is to assist him in carrying this burden. In effect, if the requirements of § 921(c)(4) are met, the claimant has made out a prima facie case of presumed pneumoconiosis, and the burden of going forward shifts to the Secretary to produce evidence sufficient under the same section to rebut the presumption. These are the usual functions of a statutory presumption—to assist one having the burden of proof and to shift the burden of going forward with evidence to the other party. *See Webre Steib Co. v. Commissioner*, 324 U.S. 164, 170–71, 65 S.Ct. 578, 89 L.Ed. 819 (1945).

In *Ansel* the Secretary contended that the negative X-rays which required the claimant to proceed by way of the § 921(c)(4) presumption were themselves sufficient to rebut the presumption. This argument was rejected since its acceptance

would render the presumption meaningless. It was the unreliability of X-rays, when considered alone, as indicators of the absence of pneumoconiosis that led to the enactment of § 921(c)(4). S.Rep., *supra.* In *Ansel* the court further held that the § 921(c)(4) presumption of total disability from pneumoconiosis could not be rebutted by a showing that the claimant's ventilatory function values equalled or exceeded those established by the interim criteria. 529 F.2d at 310. This holding was not based on any deficiency in the ventilatory function tests, but upon the fact that these tests measure lung impairment only and do not purport to show the cause of the impairment. Since § 921(c)(4) provides that the presumption, once established, may only be rebutted "by establishing that (A) such miner does not . . . have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine", the results of ventilatory functions studies have no probative value for this rebuttal purpose. Similarly, a negative inference based on ventilatory function studies would not be properly considered in determining whether the Secretary had carried his burden of going forward to rebut the presumption.

Contrary to the argument of Prokes on appeal, however, the Secretary did not rely on Ruling 73–37 as establishing facts sufficient to rebut a presumption created by § 921(c)(4). Rather the Secretary found that Prokes never established the conditions which entitled him to a presumption of disabling pneumoconiosis. The district court recognized this distinction and held that it would be contrary to the statutory scheme of the Act to permit a negative inference from failure to qualify under the interim criteria "to impugn any of the other avenues of proof of disability which are available to a black lung claimant under the statute and regulations." The district court concluded that the administrative law judge and the Secretary had, in effect, treated Ruling 73–37 as establishing a presumption rather than stating a mere inference. An inference is a conclusion which flows logically from a fact or state of facts already proven or admitted. Black's Law Dictionary 917 (rev. 4th ed. 1968). Unlike a presumption, an inference does not affect the burden of proof or the burden of going forward with the evidence. The statements in the decision of the administrative law judge, quoted earlier, that only in "an unusual case" will an individual who fails to meet the interim criteria be totally disabled due to a lung impairment and that a finding of disability "becomes less likely" as the values increase, support the district court's concern that too much reliance was placed on the negative inference of 73–37.

■ A person who is unable to establish his entitlement to benefits under the irrebuttable presumption of § 921(c)(3) (generally by X-ray or biopsy) or under the rebuttable presumption of § 921(c)(4) by satisfying the interim or continuing criteria may still be entitled to black lung benefits. 20 CFR § 410.414(c) provides as follows:

(c) *Other relevant evidence.* Even though the existence of pneumoconiosis is not established as provided in paragraph (a) or (b) of this section, a finding of total disability due to pneumoconiosis may be made if other relevant evidence establishes the existence of a totally disabling chronic respiratory or pulmonary impairment, and that such impairment arose out of employment in a coal mine. As used in this paragraph, the term "other relevant evidence" includes medical tests such as blood gas studies, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the miner's physician, his spouse's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the individual's physical condition, and other supportive materials. In any event, no claim for benefits under Part B of title IV of the Act shall be denied solely on the basis of a negative chest roentgenogram (X-ray).

This regulation is in accord with the statutory language of 30 U.S.C. § 923(b) (Supp. V, 1975) that,

In determining the validity of claims under this part, all relevant evidence shall be considered including where relevant, medical tests such as blood gas studies, X-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the claimant's physician, or his wife's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the miner's physical condition, and other supportive materials. Claimants under this part shall be reimbursed for reasonable medical expenses incurred by them in establishing their claims.

Since the definition of "all relevant evidence" includes X-rays and pulmonary function studies the Secretary must consider them in determining the validity of black lung claims. *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 31–33, 96 S.Ct. 28, 82, 49 L.Ed.2d 752 (1976). The question is whether Ruling 73–37 has the effect of minimizing or eliminating the probative value of "other relevant evidence."

■ Ruling 73–37 is not invalid in its entirety. To the extent that it recognizes an inference which logically flows from consideration of proven facts, it does no violence to the Act. However, to rely on this inference as a basis of decision without giving full consideration to all relevant evidence is error. The second sentence quoted from the headnote appears to make failure to reach the level of severity set forth in 20 CFR § 410.426 conclusive by providing that only where that level is reached may a claimant be determined to be totally disabled. The determination of whether a black lung claimant is totally disabled must take into account all relevant evidence and the provisions of 30 U.S.C. § 902(f) (Supp. V, 1975), which requires that a miner be considered totally disabled "when pneumoconiosis prevents him from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he previously engaged with some regularity and over a substantial period of time." These provisions are included in 20 CFR § 410.426,

but the regulation also contains other criteria which refer to levels of severity which have no statutory basis. To the extent that Ruling 73–37 seeks to limit the ability of a miner to establish entitlement to benefits by resort to "other relevant evidence," it is invalid. In the present case it is clear that the administrative law judge did not consider a portion of the claimant's medical history, the supplemental report of his treating physician. Though the administrative law judge relied on the claimant's objection in declining to consider the report, we have held it was error to do so.

Though the issue was not raised by the parties we are concerned that there is no evidence in the record of any medical tests other than X-rays and ventilatory studies. Section 923(b), *supra*, was added to the Act as part of the 1972 amendments. The legislative history of these amendments reflects congressional concern that all relevant medical tests be considered. Included in the Senate Report, 2 U.S.Code Cong. & Admin.News (1972) at 2319–2320, is the following language:

The art of medical diagnosis of coal miners' respiratory impairments is not so precise that a miner's benefit should stand or fall on the basis of a single test. *Every available medical tool should be used to assist a miner in successfully pursuing his claim for benefits.* This provision seeks to expand the number of medical tools available for that purpose.

Section 3(g) of the Committee bill provides, among other things, that all relevant medical tests shall be considered in determining the validity of claims for benefits. The Committee understands that many of the tests described in this provision are now given under regulations of the Social Security Administration. The Committee intends and expects that such tests will continue to be performed in any case in which such tests are relevant to the establishment of the basis for a claim for benefits. It might not be appropriate to give certain tests in certain circumstances, however. For example, a claimant who is obviously so

disabled that he can barely walk should not be required to take a test that would be so strenuous and taxing to him as to imperil his health still further. In such a case, alternative tests should be given. Further, inadequacy or unavailability of testing facilities at a particular location shall not diminish the relevancy of such tests to a given claim. If a test is needed or desirable in establishing the validity of a claim, it should be provided, even if it involves some discommodation to the Social Security Administration.

\* \* \* \* \* \*

The Committee contemplated the inclusion of an amendment which would require the Secretary of Health, Education and Welfare to pay the cost of medical tests and X-rays used to establish a claim for benefits rather than merely reimburse the claimant for such expenses. It was believed that there could be a number of cases in which a claimant would not be able to accept the financial burden of paying the initial fees for such tests. Upon assurances by the Social Security Administration that it was in fact doing as the amendment would require, and also that it is paying for additional tests required for reconsideration of claims, however, it was decided that such an amendment would not be necessary. (emphasis added).

■ Though form letters to Prokes contain references to the availability of other medical tests, the record does not indicate any attempt to assist him "in successfully pursuing his claim for benefits" by means of such tests. Prokes stated that his ventilatory function studies indicated that he was "borderline." The administrative proceedings in a black lung case under Part B of Subchapter IV of the Act are not adversary in nature. The Secretary should make certain that a black lung claimant knows of the existence of other medical tests and of the obligation of the Social Security Administration to pay for them.

The judgment of the district court is affirmed. Upon remand the Secretary will reconsider this claim on the basis of all relevant evidence presented.