**Alexander SUPERAK, Plaintiff,**

**v.**

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.**

No. 77 Civ. 1263 (WCC).

United States District Court, S. D. New York.

March 17, 1978.

Bernard R. Stave, New York City, Charles L. Widman, Washington, D. C., for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., for the Southern Dist. of New York, New York City, for defendant; Anne Sidamon-Eristoff, Asst. U. S. Atty., Borge Varmer, Regional Atty., Region II, New York City, Julia T. Reed, Asst. Regional Atty., Dept. of Health, Ed. and Welfare, of counsel.

### MEMORANDUM AND ORDER

CONNER, District Judge:

This is an action brought under section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health, Education and Welfare (the "Secretary"), which denied plaintiff's application for

"black lung" benefits pursuant to sections 411(a) and 412(a)(1) of the Federal Coal Mine Health and Safety Act of 1969 (the "Coal Mine Act"), 30 U.S.C. §§ 921(a) and 922(a)(1).

Plaintiff filed a statement of intention to apply for black lung benefits on May 1, 1973, and an application for black lung benefits on October 4, 1973. The application was denied both initially and after reconsideration. Plaintiff requested a hearing which was held on August 11, 1976. The Administrative Law Judge, before whom plaintiff appeared without counsel, considered the case de novo, and on August 28, 1976 found that plaintiff was not eligible for black lung benefits because he had not shown that he was totally disabled due to pneumoconiosis. The decision of the Administrative Law Judge became the final decision of the Secretary when it was approved by the Appeals Council on November 24, 1976. This action followed.

Plaintiff has moved for summary judgment on the ground that the record filed in this case does not contain substantial evidence to support the Secretary's final decision, or, in the alternative, for remand to the Secretary for further hearing on the ground that plaintiff was not represented by counsel at the administrative hearing, was not orally advised of his right to counsel, and was thus unable to develop fully the record before the administrative law judge. Defendant has cross-moved for summary judgment on the ground that the Secretary's decision was supported by substantial evidence and that plaintiff was not prejudiced at the hearing by the fact that he was not represented by counsel to such a degree that the matter should be remanded for a new administrative hearing.

Plaintiff is a 62-year-old male with a tenth-grade education. He worked outside the mines, picking up slate and sorting coal from 1930 to 1934. He then spent 28 years as a deep-shaft miner, performing all the tasks of a miner. He alleges total disability due to pneumoconiosis as of May, 1973.

At the administrative hearing on his claim held August 11, 1976, the following medical evidence was presented. A chest X-ray taken on January 25, 1973, and interpreted by the Social Security Administration on December 10, 1974, indicated that plaintiff's lungs had no large or small opacities, that his cardiac outline and diaphragm were not ill-defined, but that there was some pleural thickening in his right lung. Plaintiff's pleural calcification grade, however, was zero.

On January 16, 1974, plaintiff's chest was X-rayed by Dr. A. A. Maglione, a radiologist, at Phelps Memorial Hospital. Dr. Maglione stated that there was no definite change in the appearance of plaintiff's chest since the examination of January 1973. He stated that the chest was emphysematous especially in the lower zones, that there were fibrotic strands in the left lower lobe, and that a calcific focus was seen in the periphery of the right base. There was no indication of recent pulmonary or pleural pathology.

Also on January 16, 1974, plaintiff was given a pulmonary function test at the Phelps Memorial Hospital. The diagnosis was "pneumoconiosis," and coughing with dark sputum was noted. The pulmonary function test (the result of two tracings) indicated that plaintiff had a ventilation equivalent ($FEV_1$) of 2.4 or 69%, of the predicted $FEV_1$ and a maximum breathing capacity (MVV) of 30, or 28% of the predicted MVV. The doctor's impression was of a "moderately severe obstructive lung disease."

On June 13, 1974, Dr. H. Kessler, another radiologist at Phelps Memorial Hospital, reexamined plaintiff's chest. He stated that two small round opacities were seen in the right lower lung zone, one of which contained calcification and which (he stated) were present in a previous study of March 16, 1969. The lung fields were mildly hyperinflated with depression of the diaphragmatic leaflets. Linear bands of increased density were interpreted as representing pleural thickening, rather than lung fibrosis. There was no evidence of recent infiltration, consolidation, or pleural effusion in either lung field. There were mild hyper-

trophic and degenerative changes of plaintiff's dorsal spine. Dr. Kessler's conclusion was that there was a mild air-trapping disease of the lungs. The other radiographic findings were consistent with plaintiff's occupation (miner) and "most probably indicate minimal changes related to pneumoconiosis." A pulmonary function test was also taken on June 13, 1974 at the hospital. This test (the result of one tracing) indicated that plaintiff's $FEV_1$ was 79% of predicted, and that his MVV was 43, or 48% of predicted. "Pneumoconiosis" was again the diagnosis.

The record also contains a letter from Dr. Albert Sheehy, dated December 12, 1975. Dr. Sheehy stated that plaintiff complained of severe shortness of breath after mild exertion, non-productive cough, and frequent respiratory infections. Plaintiff's chest was symmetrical and quite large in anterior-posterior diameter, and he used accessory muscles of respiration with moderate prominence. His breath sounds were distant and there were low fixed diaphragms, with no dullness to percussion and no rales. His heart was normal except for a 1⁄6 systolic murmur at the low sternal border. There was no clubbing, pallor, or edema, but there was early breaking of nails. A chest X-ray showed hyperinflation and low, felt diaphragms and signs of old pleural reactive changes in the left base and scattered rounded opaque densities in the right base. Pulmonary function tests showed a MVV 36% of predicted, and $FEV_1$ of 61% of predicted. An EKG was normal. Dr. Sheehy stated that subjective and objective evidence of moderate to severe lung disease was present, and that etiological factors (long-term smoking and long-term employment in the coal mine) were also relevant. He concluded that plaintiff was sufficiently disabled functionally by his pulmonary limitations effectively to prohibit his employment in work for which he was trained, experienced, and capable.

Plaintiff testified at the hearing that, since he stopped working as a miner on his doctor's advice, he has worked 15–20 hours a week as a gasoline station attendant, pumping gas. He does no heavy labor at his present job. He stated that his life has changed considerably since his disease began seriously affecting him. He stated that he used to be terribly fit, performing work around the house that required heavy exertion. Presently, he can do no such work because he gets exhausted easily and begins spitting up a dark substance.

Plaintiff's wife also testified at the hearing. She stated that plaintiff needs four pillows to sleep at night (a common symptom of breathing difficulties) and that he often coughed up "horrible black stuff."

Subsequent to the administrative hearing, plaintiff wrote to HEW that he had found another medical report, dated August 16, 1976, from Dr. Alberti (plaintiff's physician at Phelps Memorial Hospital) which diagnosed plaintiff as then suffering from pneumoconiosis. Plaintiff's symptoms were chest pains, shortness of breath, a cough, and dark-colored sputum. Objective findings were listed as rales in both lung fields and X-ray positive findings.

■ In order to establish entitlement to miner's black lung benefits, plaintiff must show that he is totally disabled due to pneumoconiosis that arose out of his employment in the nation's coal mines, 30 U.S.C. § 921(a). The Coal Mine Act and the regulations promulgated thereunder provide both irrebuttable and rebuttable presumptions of total disability due to pneumoconiosis for claims filed before December 31, 1973, and determined by the Secretary of HEW pursuant to Part B of the Act.[1]

A "first-level,"[2] irrebuttable presumption that the miner is totally disabled by his pneumoconiosis arises if the miner can prove, by X-ray, biopsy or other comparable

---

1. Claims filed after January 1, 1974, are governed by Part C of the Coal Mine Act, 30 U.S.C. § 931 et seq., and are determined by the Secretary of Labor.

2. I have adopted the concept of "levels" to simplify reference to the scheme of presumptions created by the Act. The term itself does not appear in either the statute or the regulations.

diagnoses, the existence of a specified level of chronic dust disease of the lung. 30 U.S.C. § 921(c)(3). The applicable regulation, 20 C.F.R. § 410.418, sets out the required proof:

"§ 410.418. Irrebuttable presumption of total disability due to pneumoconiosis.

"There is an irrebuttable presumption that a miner is totally disabled due to pneumoconiosis, or that a minor [sic] was totally disabled due to pneumoconiosis at the time of his death, if he is suffering or suffered from a chronic dust disease of the lung which:

"(a) When diagnosed by chest roentgenogram (X-ray), yields one or more large opacities (greater than 1 centimeter in diameter) and would be classified in Category A, B, or C (that is, as 'complicated pneumoconiosis'), in:

"(1) The ILO–U/C International Classification of Radiographs of Pneumoconioses, 1971, or

"(2) The International Classification of the Radiographs of the Pneumoconioses of the International Labour Office, Extended Classification (1968) (which may be referred to as the 'ILO Classification (1968)'), or

"(3) The Classification of the Pneumoconioses of the Union Internationale Contra Cancer/Cincinnati (1968) (which may be referred to as the 'UICC/Cincinnati (1968) Classification'); or

"(b) When diagnosed by biopsy or autopsy, yields massive lesions in the lung. The report of biopsy or autopsy will be accepted as evidence of complicated pneumoconiosis if the histological findings show simple pneumoconiosis and progressive massive fibrosis; or

"(c) When established by diagnoses by means other than those specified in paragraphs (a) and (b) of this section, would be a condition which could reasonably be expected to yield the results described in paragraph (a) or (b) of this section had diagnoses been made as therein prescribed; *Provided, however,* That any diagnoses made under this paragraph shall accord with generally accepted medical procedures for diagnosing pneumoconiosis."

The Secretary found that this irrebuttable presumption was not available to plaintiff because the X-rays of plaintiff's chest did not establish the existence of "complicated" pneumoconiosis, *i. e.,* Category A, B, or C and plaintiff offered no biopsies or other diagnoses.

The Act and applicable regulations also provide for a "second-level," rebuttable presumption of total disability, upon more liberal criteria, for miners who filed an application prior to July 1, 1973. 20 C.F.R. § 410.490. A miner will be presumed totally disabled due to pneumoconiosis if (1) there is X-ray evidence of Class 1, 2, or 3 pneumoconiosis (*i. e.,* something less than the "complicated" pneumoconiosis of Classes A, B, or C) or (2) the miner worked underground for 15 years and there are ventilatory studies that establish the presence of a chronic respiratory impairment as demonstrated by values specified in the following table:

| [Height] | Equal to or less than -- | |
| --- | --- | --- |
| | $FEV_1$ | and MVV |
| 67" or less | 2.3 | 92 |
| 68" | 2.4 | 96 |
| 69" | 2.4 | 96 |
| 70" | 2.5 | 100 |
| 71" | 2.6 | 104 |
| 72" | 2.6 | 104 |
| 73" or more; and | 2.7 | 108[3] |

The Secretary found that interpretations of plaintiff's X-rays established that plaintiff may have simple (Class O) pneumoconiosis, but none of the more severe forms required by the interim standard.

With respect to the results of plaintiff's ventilatory studies the Secretary found that plaintiff, whose height is set forth in the record as 67", met the value established for MVV in all three tests, and met the value

---

**3.** This test is described in detail at 1972 U.S.Code Cong. & Admin.News, pp. 2319–20.

established for $FEV_1$ in the tests taken at Phelps Memorial Hospital on January 16, 1974 and reported by Dr. Sheehy in December 1975, but not in the June 13, 1974 Phelps Memorial test. The regulations, however, do not require the claimant to demonstrate these values in more than one test, and plaintiff would apparently be entitled to a rebuttable presumption of total disability due to pneumoconiosis on the basis of either the January 1974 test or the test reported by Dr. Sheehy. The Secretary found, however, that all three tests were "not medically acceptable" because they failed to meet certain requirements set forth in the regulations, which provide:

"§ 410.430. Ventilatory studies.

"Spirometric tests to measure ventilatory function must be expressed in liters or liters per minute. The reported maximum voluntary ventilation (MVV) or maximum breathing capacity (MBC) and 1-second forced expiratory volume ($FEV_1$) should represent the largest of at least three attempts. The MVV or the MBC reported should represent the observed value and should not be calculated from $FEV_1$. The three appropriately labeled spirometric tracings, showing distance per second on the abscissa and the distance per liter on the ordinate, must be incorporated in the file. The paper speed to record the $FEV_1$ should be at least 20 millimeters (mm.) per second. The height of the individual must be recorded. Studies should not be performed during or soon after an acute respiratory illness. If wheezing is present on auscultation of the chest, studies must be performed following administration of nebulized broncho-dilator unless use of the later [sic] is contraindicated. A statement shall be made as to the individual's ability to understand the directions, and cooperate in performing the tests. If the tests cannot

be completed the reason for such failure should be explained."

The Secretary disregarded the tests because none contained a statement that plaintiff understood the directions and cooperated in the performances of the tests, and because none of the tests met the three-tracing requirement. The January 1974 test was based on two tracings; the June 1974 test was based on one tracing; Dr. Sheehy's report does not indicate the number of tracings taken, and is not accompanied by the actual tracings.

The statute, however, affords miners employed in the mines for 15 years or more a "third-level" presumption that operates independently of X-ray reports or pulmonary function studies. Where X-rays submitted are interpreted as negative or where a ventilatory test is unavailable or insufficient, the Act provides that "if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis."[4] 30 U.S.C. § 921(c)(4); 20 C.F.R. § 410.426(d). A respiratory impairment is "totally disabling" if it prevents the miner "from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time, that is, 'comparable and gainful work' . . . ." 20 C.F.R. §§ 410.412, 410.426(d).

The Secretary may rebut the presumption of § 921(c)(4) only by establishing "that the miner does not . . . have pneumoconiosis, or that his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 20 C.F.R. § 410.414(b)(2).

---

4. Other evidence includes:

"medical tests such as blood gas studies, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the miner's physician, his spouse's affidavits, and in the case of a deceased miner, other appropriate affida-

vits of persons with knowledge of the individual's physical condition, and other supportive materials. In any event, no claim for benefits under Part B of Title IV of the Act shall be denied solely on the basis of a negative chest roentgenogram (X-ray)." 20 C.F.R. § 410.-414(c).

■ Since plaintiff demonstrated 15 or more years of employment, he became eligible for the rebuttable presumption of § 921(c)(4) upon showing: (1) a chronic respiratory or pulmonary impairment; (2) a total disability; and (3) the primary cause of the total disability is the chronic respiratory or pulmonary impairment.

The Secretary concluded that plaintiff was not entitled to this third-level presumption. Specifically, he adopted the findings of the Administrative Law Judge that the evidence does "not demonstrate the level of severity . . . contemplated by the [regulations]," and that "the claimant is not disabled within the meaning of the Act." Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), incorporated by reference into the Coal Mine Act by 30 U.S.C. § 923(b), provides that the findings of the Secretary shall be conclusive if supported by substantial evidence.

■ The Court finds that there is no substantial basis for the Secretary's finding that plaintiff failed to establish that he was totally disabled within the definition of the Act.

Plaintiff unquestionably suffers from a chronic respiratory or pulmonary impairment. He testified that he was told by his family doctor to leave the mines because he had "Black Lung miner's asthma," and a spot on his lung, that he has a productive cough, shortness of breath, and chest pains. His wife testified that he needs four pillows to prop himself up in order to sleep. All of the medical reports submitted show evidence of pulmonary impairment, such as small opacities in the lungs, and several reports specifically diagnose plaintiff's condition as pneumoconiosis.

The Secretary appears to concede that plaintiff has a pulmonary impairment, but found that it is not "totally disabling." There is, however, no direct evidence in the record from which it could be concluded that plaintiff could engage in gainful employment requiring abilities comparable to those of his employment in the mines. *Ansel v. Weinberger*, 529 F.2d 304, 309 (6th Cir. 1976).

In *Ansel*, the Sixth Circuit reversed the District Court ruling that the Secretary had a substantial basis for his finding that the claimant failed to establish total disability. As in *Ansel*, the uncontradicted lay and expert testimony in this case demonstrates that plaintiff is totally disabled within the meaning of the Act. Plaintiff testified that his symptoms prevented him from doing work even less strenuous than that he performed in the mines, and that he can only work 15 to 20 hours per week pumping gas. Although the Administrative Law Judge found that plaintiff's symptoms "did not demonstrate the level of severity . . . contemplated by the regulations," he cited no facts of record and made no finding that plaintiff can perform work comparable to mining. For example, in contrast to *Padavich v. Mathews*, 416 F.Supp. 1229, 1231 (S.D.Iowa 1976), aff'd, 561 F.2d 142 (8 Cir. 1977), and *Brock v. Weinberger*, 405 F.Supp. 1329, 1332 (W.D.Ark.1975), there is no evidence that plaintiff has in fact been engaged in comparable work since leaving the mines. Plaintiff's doctor stated unequivocally that plaintiff was totally disabled. Dr. Sheehy reported that plaintiff "is sufficiently disabled functionally by his pulmonary limitation to effectively prohibit employment in work for which he is trained, experienced and capable." It is true that a physician's conclusion on the ultimate issue is not determinative, 20 C.F.R. § 410.471, but there is no medical or other testimony to the contrary. *Ansel v. Weinberger, supra* at 309; *Pike v. Mathews*, 414 F.Supp. 848, 850 (E.D.Tenn.1976); cf. *Jeffries v. Mathews*, 431 F.Supp. 1030 (E.D.Tenn.1977); *Mullins v. Mathews*, 414 F.Supp. 874 (W.D.Va.1976).

The only apparent basis for the Secretary's decision, therefore, is the *absence* of *clinical* evidence of significant functional loss. The Administrative Law Judge found, for example, that "the credible evidence, including X-ray, pulmonary function study results and other relevant evidence of record, does not demonstrate significantly impaired lung function as a result of a chronic respiratory or pulmonary condition." The

decision also explicitly relies upon Social Security Ruling No. 73–37, which holds that where X-ray or ventilatory test results submitted by a claimant fail to establish both disability under interim regulatory criteria, it may be inferred that a miner is not totally disabled. Thus the Administrative Law Judge inferred that plaintiff was not totally disabled because his X-rays and pulmonary tests did not qualify him for a statutory *presumption* of disability.[5]

Although the Secretary correctly found that neither the X-rays nor the pulmonary tests established total disability under the second-level presumption, he erred in drawing an inference from plaintiff's failure to establish such a presumption that plaintiff was not totally disabled.

The third-level presumption of § 921(c)(4) was meant to give miners an opportunity to establish eligibility independently of X-rays or ventilatory tests—in part because Congress found that such tests were not wholly reliable in determining or confirming the existence or non-existence of totally disabling pneumoconiosis.[6] 1972 U.S.Code Cong. & Admin.News, pp. 2312–14; *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 7, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976); *Morris v. Mathews*, 557 F.2d 563 (6th Cir. 1977). There would be no point in creating an alternative presumption based on "other evidence" if the failure to meet the interim X-ray or pulmonary standards alone could preclude its operation. Accordingly, the Eighth Circuit has found the Ruling relied upon by the Administrative Law Judge in this case "unreasonable" because it conflicts with the Act by creating a "counter-presumption," shifting to the miner "the burden of producing evidence to show some greater level of disability than would otherwise be required by the statute," and "contrary to Congress' recognition that objective medical tests are inconclusive indicators of pneumoconiosis and the intention of Congress to resolve doubts in favor of the miner absent 'definitive medical conclusions'." *Bozwich v. Mathews*, 558 F.2d 475, 479–80 (8th Cir. 1977). Similarly, the Sixth Circuit has held that "to the extent that Ruling 73–37 seeks to limit the ability of a miner to establish entitlement to benefits by resort to 'other relevant evidence,' it is invalid." *Prokes v. Mathews*, 559 F.2d 1057, 1062 (6th Cir. 1977). This Court agrees that negative X-ray reports and pulmonary function studies—at least in the absence of other evidence tending to negate total disability—should not be used to prevent operation of, or to rebut, the statutory presumption of total disability created by other evidence under § 921(c)(4).[7] *Bozwich v. Mathews, supra* at 479–80; *Prokes v. Mathews, supra* at 1062; *Henson v. Wein-*

5. Since the Secretary found that the pulmonary tests had *no probative value* for purposes of establishing a presumption of total disability, they cannot support a negative inference. Moreover, such an inference is particularly unfair in this case since, but for the technical deficiencies in the conduct of the tests—for which plaintiff cannot be held responsible— plaintiff's performance on those tests would have in fact established a second-level presumption of total disability. Any inference drawn from those tests should therefore operate to support, rather than to defeat, plaintiff's claim for benefits.

6. Denial of benefits "solely on the basis of the results of a chest roentgenogram [X-ray]" is expressly prohibited. 30 U.S.C. § 923(b); 20 C.F.R. § 410.414(c); 1972 U.S.Code Cong. & Admin.News, pp. 2314–16.

7. Nor can Dr. Sheehy's report that plaintiff demonstrated no wheezing, edema, clubbing, pallor, or rales, support the denial of benefits. These findings occur in the context of a diagnosis of total disability, uncontradicted by other medical testimony, and in the context of ventilatory test results that, but for the technical deficiencies in reporting, show plaintiff presumptively disabled under the interim regulations. Moreover, a miner is not required to exhibit every conceivable symptom associated with severe lung impairment. A showing of total disability by affirmative evidence cannot be refuted by pointing to the absence of a miscellany of discrete symptoms. To do so would undermine the purpose of the Act and the 1972 amendments to assure benefits for long-term miners despite the absence of specific clinical evidence, and contravene the plain intent of Congress that "[i]n the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the disabled miner or his survivors." 1972 U.S.Code Cong. & Admin.News, p. 2315.

78

berger, 548 F.2d 695, 698–99 (7th Cir. 1977); Ansel v. Weinberger, supra at 309–310; Pike v. Mathews, supra at 851; Cope v. Mathews, 415 F.Supp. 467, 469 (E.D.Tenn. 1976).

Finally, there is no evidence that plaintiff's chronic pulmonary impairment was not the primary reason for his total disability. Dr. Sheehy stated that plaintiff was totally disabled due to his pulmonary limitations, and there is no indication of any other possible cause for plaintiff's disability. Cf. Seacrist v. Weinberger, 538 F.2d 1054 (4th Cir. 1976); Adkins v. Weinberger, 536 F.2d 113 (6th Cir. 1976); Mullins v. Mathews, supra; Pichon v. Mathews, 408 F.Supp. 1, 4 (N.D.Ill.1976).

On this record, therefore, plaintiff has established a third-level presumption of total disability due to pneumoconiosis pursuant to Section 921(c)(4), and that presumption has not been rebutted by the Secretary. Under these circumstances, the Secretary was required to award benefits; his decision must therefore be reversed and plaintiff awarded benefits in accordance with the provisions of the Act. Pike v. Mathews, supra at 851; Henson v. Weinberger, supra at 695; Large v. Mathews, 416 F.Supp. 1232, 1235–36 (S.D.Iowa 1976); Tonker v. Mathews, 412 F.Supp. 823, 827 (W.D.Va. 1976); Shortt v. Mathews, 420 F.Supp. 497, 500 (W.D.Va.1975).

Accordingly, plaintiff's motion for summary judgment is granted and defendant's cross motion for summary judgment is denied.

SO ORDERED.